HARDIN, executor, vs. ALMAND.

1. Where parties to a pending case referred the matters in dispute to arbitrators, without any order of court for that purpose, and an award was made and returned into court, and exceptions filed thereto, on the trial of the issue so formed it was not error to allow the award to be introduced in evidence without being proved.

2. Parties to a pending case may refer the matters involved to arbitration without an order of court.

(a) An exception to an award which alleges a mere error of judgment in the arbitrators in giving weight to certain parts of the evidence, or in failing to give proper weight to other parts, is demurrable.

3. Exceptions to an award do not bring the whole case up de novo. New evidence is admissible to show that the award is the result of fraud, accident or mistake, that there was a reference to chance, or that it is otherwise illegal, but not for the purpose of merely strengthening the case made before the arbitrators.

4. A judgment in favor of a party can be no ground of exception by him.

5. If an exception to an award on the ground that it is contrary to and against the evidence be sufficient to be considered at all, it is for the jury, not the judge.

6. The charge of the court in this case, taken as a whole, is sufficiently full.

7. One who seeks to set aside an award on the ground that it is the result of mistake, must show that mistake; nor is it sufficient to infer a mistake because the weight of the evidence was against the award.

8. Where the case is fully covered by the general charge, the failure to instruct the jury on a particular branch of it is not error in the absence of a request. The failure to charge here complained of was not error, as there was no evidence to warrant it.

9. There being evidence to support the verdict, and the presiding judge approving the finding, we will not interfere.

Arbitrament and award. Evidence. Practice in the Supreme Court. Charge of Court. New trial. Before Judge SPEER. Newton Superior Court. September Term, 1879.

In 1864 Green B. Almand died testate. His will, among other things, provided as follows: " The whole of my es-

tate, of every kind, I direct to be left in the possession of my wife, the income accruing thereon to be by her used for the support of herself and my only son, during her natural life, widowhood, or until my son becomes of age; and in the event of my said wife's marriage, I direct that *one-third* of all my property be allowed her by my executors hereinafter appointed; and the residue of my estate, after such division, I direct to be held by my said executors for my only son until he becomes of age, and in the event of her death before marriage, then my whole estate to be given to my only son, and if my wife and son should survive until my said son becomes of age, then my wife to have one-third and my son the other two-thirds."

Hardin qualified as executor. The widow retained possession up to her marriage in 1877. In the same year Almand, the son, cited Hardin, the executor, to appear before the ordinary for a final settlement. On the trial, the ordinary rendered judgment against the executor for $7.61, and plaintiff entered an appeal. After the adjournment of the term of the superior court to which the appeal was returned, the parties signed the following agreement to submit to arbitration:

"Whereas certain disputes exist between the parties, and that the same is now in litigation in Newton superior court, on appeal from the court of ordinary of Newton county, said suit arising from the actings and doings of the said John F. Hardin, executor of G. B. Almand, the said M. W. Almand being a legatee under the will of said G. B. Almand. Now it is agreed by and between the plaintiff and defendant in the above stated suit that said case be referred to the arbitrament and award of John J. Stephenson and Capers Dickson, Esqs., both of said county, as arbitrators, and E. F. Edwards, as umpire; that they have power to look into and investigate all matters touching the actings and doings of the said John F. Hardin as executor of G. B. Almand, and make a full and fair settlement between the parties. That they may receive and hear such evidence as may be offered by each of the parties, and after hearing the same make an award in writing, signed and sealed; which said award shall be final and forever conclusive upon the parties in regard to the final settlement of said executor with said legatee, M. W. Almand. It is agreed that said arbitrators may meet this day and dispose of said case, and when said

award is made, then returned to the adjourned term of Newton superior court, or other term, and be made the judgment thereof. In witness whereof we have hereto set our hands and seals, this day and year above written."

The principal points of dispute seem to be whether the claims in the hands of the executor were insolvent, or whether he could have collected them; and also whether certain *fi. fas.* held by him against one Osborn should have been collected, or whether they had been paid off by the testator to protect certain land which he bought from Osborn, and formed a part of the consideration paid for the land. The specific claims which were thus contested, and the evidence in regard to them, *pro* and *con*, are not necessary to an understanding of the points decided. The other facts are set out in the decision.

J. J. FLOYD, for plaintiff in error.

A. B. SIMMS; CLARK & PAGE, for defendant.

JACKSON, Justice.

Pending a suit in Newton superior court, the parties, without an order of court, submitted their differences to arbitration, the arbitrators made an award, and on the motion to make that award the judgment of the court, exceptions thereto were filed by Hardin; the jury sustained the award except as to fees of the arbitrators, and Hardin moved for a new trial; that motion was overruled and he excepted.

The arbitrators and umpire made the following award:

"The undersigned, to whom was referred the matter in dispute between John F. Hardin, executor of G. B. Almand, deceased, and M. W. Almand, both of the county of Rockdale, respecting the actings and doings of the said John F. Hardin, executor of G. B. Almand, upon and by virtue of an application made to the court of ordinary of said county, on the 13th day of March, 1877, by M. W. Almand, a legatee under the will of the said G. B. Almand, asking for a final settlement between himself as legatee as aforesaid and John F. Hardin, executor of G. B. Almand, deceased, which application was heard and determined by the court of ordinary on the 19th day of April, 1877; and on the 21st day of the same month, an appeal was entered to the superior court of said county by M. W. Almand, legatee as aforesaid;

and on the 24th day of October, 1877, articles of agreement and submission were made and entered into between the parties at issue, referring the whole matter of final settlement to the arbitrament of the undersigned. And it was then and there agreed by the parties, that the said arbitrators and umpire have full power to look into and investigate all matters touching the actings and doings of the said John F. Hardin as executor of G. B. Almand, and to make a full and fair settlement between the parties. And in obedience to said submission and agreement, said arbitrators and umpire proceeded to hear the matters in dispute, having met for that purpose in the court-house, in the city of Covington in said county, on the 30th day of October, 1877, that day having been agreed on by the parties, they having due notice of the same, when a portion of the evidence and mattters in dispute was submitted, to-wit: plaintiff introduced an exemplification from the records of the court of ordinary of said county, showing the returns, vouchers, etc., of John F. Hardin as executor of G. B. Almand, as well as the amount of money that came into the executor's hands; what the estate was appraised at, etc.; which exemplification also showed certain *fi. fas.* that had been returned by the executor to the court of ordinary as good, and further showed the actings and doings of the said John F. Hardin as executor, from the date of his qualification in 1866, to his last returns to the court of ordinary, which was in July, 1877.

The defendant then showed that nearly all the notes appraised as belonging to the said estate were utterly insolvent and worthless with but five exceptions. Defendant also stated that the Osborn *fi. fas.* had been paid off in payment for land bought of Elias Osborn by the said G. B. Almand, that, at least, was his understanding, and admitted that he had made no effort to collect them, and that they came into his hands as property of the estate of G. B. Almand, and had been by him so returned to the court of ordinary; that he had collected $32.55 on one of said *fi. fas.* from Elias Osborn, some six months after the consummation of the land purchased by G. B. Almand of the said Elias Osborn, which credit also appears on the back of said *fi. fa.* The *fi. fas.* showed they had been paid off by G. B. Almand to various parties, and by them transferred to and controlled by G. B. Almand against Elias Osborn. The hearing of the case was then continued until November the 7th, 1877, when defendant introduced further testimony in regard to the worthlessness of the notes as being barred by the statute of limitations, the insolvency of the parties, etc. Plaintiff showed that in two or three cases, where the executor held small notes against parties, that he never called on them for pay, and they swear they were ready to have paid him at any time. Plaintiff also put in evidence the record of deeds showing the date of the sale of land by Osborn to Geiger, that it was subsequent to the date of the judgment against Osborn, and, therefore, the land was bound for the money and the same could have been made on the *fi. fas.* after Geiger's purchase.

" After argument of counsel on both sides, the whole matter in dispute in regard to a final settlement between the said John F. Hardin, executor as aforesaid, and M. W. Almand, legatee under the will of Green B. Almand, deceased, was left in our hands as arbitrators and umpire as aforesaid. We therefore find and award that twenty-six hundred and twenty-four dollars and ninty-five cents, of good money, came into the hands of John F. Hardin as executor of Green B. Almand, deceased, during the years 1867 and 1868, and after allowing him the expenses of administration, and expenses of ward, as shown by his returns to the court of ordinary of said county, up to July 1877, and computing interest at the rate of seven per cent. per annum, to January 1st, 1874, against the said executor, and then compounding at six per cent. to date, upon said amounts, and allowing him interest at seven per cent. on all disbursements to date, we find due M. W. Almand, legatee as aforesaid, from the executor, up to date, on said amount, the sum of two hundred and six dollars and eighty-two and a half cents. We also find and award, that the *fi. fas.* against Elias Osborn, amounting to eight hundred and thirty-five dollars and twenty-eight cents, came into the hands of John F. Hardin as executor as aforesaid, and that they were not satisfied or paid off, and the money could have been made on said *fi. fas.* by the executor out of the property of the said Elias Osborn. Computing interest on the said amount of *fi. fas.* at seven per cent. per annum, from 1st of January, 1868, to date, we find due M. W. Almand, legatee as aforesaid, from John F. Hardin as executor of G. B. Almand, deceased, the sum of fourteen hundred and eleven dollars and eighty-five cents. We further find and award, that four small notes and one receipt from D. T White, J. P., for collection of a note put in White's hands, amounting in the aggregate to about forty-four dollars as principal, should be charged up against the executor, with interest to date in favor of the ward. We find, therefore, due M. W. Almand, legatee as aforesaid, from this source, from John F. Hardin, executor of G. B. Almand, deceased, the sum of eighty-eight dollars and fifty cents, making the aggregate that we find and award due M. W. Almand, legatee, as aforesaid, from John F. Hardin, executor of G. B. Almand, deceased, upon final settlement between the parties at issue, up to date, the sum of seventeen hundred and seven dollars and seventeen and a half cents, ($1,707.17½.)

" We further find and award, that the cost already accrued, and that may hereafter accrue in this case, be paid by the said John F. Hardin, executor of G. B. Almand, deceased. We further find and award, that the sum of one hundred dollars be paid the said arbitrators and umpire in the above case, as a fee. The payment of the same to be equally shared by the said John F. Hardin, executor as aforesaid, and the said M. W. Almand.

" Witness our hands and seals this 17th day of November, 1877."

(Signed by the arbitrators and umpire.)

A copy of the said award was served on J. W. B. Summers, as attorney for John F. Hardin, on the 27th day of November, 1877, by E. F. Edwards, umpire.

At September adjourned term, 1877, held the first week in December, 1877, a motion was made to approve the said award, and to make it the judgment of the court. Objections were regularly filed to the said award, and the said motion stood over on the docket unheard until the regular September term, 1879. Many objections were filed to the said award, but all were abandoned except the following, viz:

First. Because the arbitrators made a mistake in making the amount due to the said M. W. Almand from John F. Hardin, to be the sum of $1,707.17½, when a fair calculation shows only the sum of $7.61 to be due him.

Second. Because the arbitrators erred in making the said John F. Hardin liable for the Osborn *fi. fas.*, as mentioned in the inventory of G. B. Almand's estate, the evidence showing that the said *fi. fas.* against Osborn were a part of the consideration for a tract of land purchased by G. B. Almand from said Osborn, and that G. B. Almand took control of said *fi. fas.* to protect his title to the said land.

Third. Because the said arbitrators erred in making the whole of said *fi. fas.*, or the amount apparently due thereon, to be the property of M. W. Almand, whilst the said M. W. Almand is entitled only to two-thirds thereof under the will of G. B. Almand.

Fourth. Because the finding of the arbitrators of four small notes and one receipt from D. T. White, J. P., for collection of a note in White's hands, amounting in the aggregate to about forty-four dollars, principal, should be charged up against the executor, is too vague and uncertain, there being no person mentioned in the award as to who these notes were against; and the testimony before the arbitrators showing that all the notes in the schedule (inventory) were insolvent, and that the executor had made efforts to

collect the money on White's receipt, but was informed by White that it could not be collected.

Fifth. Because the award does not contain an itemized account and settlement between the parties—merely the aggregate result being stated from data given, as the various amounts entering into the calculations, and their action thereon.

Sixth. Because the arbitrators erred in fixing their fees at $100.00 as compensation for their services, without the consent of the parties to said arbitration.

Seventh. Because of newly discovered evidence of the fact that the entry of a credit of $32.55 on the Osborn *fi. fa.* was made by mistake, and the money was collected by the daughter of the defendant (Mrs. Almand) on a note held by her against D. T. White and others, and entered on the *fi. fa.* through mistake, and should have been entered as a credit on said note, which was one of the notes included in the inventory, and which was put in suit but no recovery had thereon.

Eighth. That defendant avers that the said *fi. fas.* against Osborn were paid off by the said Almand in Confederate money to the said plaintiff therein, and held by the said Almand for the purpose of protecting the title to the land purchased by him from the said Osborn, and the same being part of the purchase money for the said land.

Ninth. That said defendant did not swear before the arbitrators that he had collected $32.55 on the Osborn *fi. fas.*

Tenth. That the said submission was not fairly made, in this, that it was induced by the suggestion of the party, M. W. Almand, without the knowledge or consent of counsel for defendant, and in the absence of defendant's counsel, to refer the said case to arbitration; the agreement was made and signed on the 24th day of October, 1877, after the adjournment of the regular September term, 1877, and before the adjourned term, to be held in December, 1877; the agreement was entered into and the trial commenced on the same day and concluded on the 27th of No-

vember, 1877. Defendant had no notice of the adjournment of said arbitrators, and was not present at all after the 24th of October, 1877.

Eleventh. The defendant and plaintiff agreed that the executions against Osborn should not be counted against him, and that said arbitrators should simply revise the calculations of the ordinary, and should not review his decision on any item of credit allowed by him to defendant.

Twelfth. Because there was no order of the court allowing said cause to be submitted to arbitration. (This exception was ruled out by the court.)

Thirteenth. Because the interest was improperly compounded against defendant, and was not compounded in his favor.

Fourteenth. Because the arbitrators erred in determining that John F. Hardin was liable for the debt against Elias Osborn, because the said claim was not in his hands for control, except for appraisement, up to the time of the marriage of Elizabeth Almand, widow of said deceased, and in and at the time, and long before that time, the said Elias Osborn was insolvent, and in 1868 took homestead.

The grounds of the motion for a new trial are as follows :

First. Because the court erred in refusing to hear the exception filed by defendant to the said award, as follows : This suit was pending on appeal from the court of ordinary to the superior court, and the said superior court having jurisdiction of the said cause, could not be ousted of that jurisdiction but by an order of said court, and the consent of the parties. There was no order of the said court authorizing a reference of this case to arbitration. The court ordered this ground to be stricken out for the reason that it came too late.

Second. Because the court erred in ordering the following exception to be stricken out of the list of defendant's objections to the award, to-wit : The arbitrators erred in determining that John F. Hardin, as executor, was liable for the debt against Elias Osborn (by the evidence it was

shown them that the said claim was not in his control from the time of the death of his testator, except for the purpose of appraisement,) up to the time of the marriage of Mrs. Elizabeth Almand, widow of deceased, to-wit: 1867; and at that time, and before that time, the said Elias Osborn was insolvent, and took homestead in 1868, and in refusing to hear and admit any evidence to support that objection.

Third. Because the court erred in rejecting the testimony of Elias Osborn that he was utterly insolvent long before Green B. Almand ever got control of the said executions against him, and in rejecting Osborn's homestead.

Fourth. Because the court erred in stating before the jury, during the progress of the trial, that any evidence which would illustrate any issue before the arbitrators, was competent in this court, and afterwards ruling that he was wrong in that decision, and then ruled that no evidence was competent before this court that was not in evidence before the arbitrators, and ruling out all the evidence that conflicted with this last ruling.

When the motion for a new trial was presented to the court for his approval, he struck out this ground by running his pen across it, and writing across it, " This ground is error;" and writing in the margin as follows: " The court decided that any evidence was admissible and competent for the jury that would show, or tend to show, that the award made by the arbitrators was the result of either fraud, accident or mistake, or otherwise illegal; but that it was not competent by evidence to make a new case here, that was not made before the arbitrators and by that means set aside the award."

Fifth. Because the court erred in holding and deciding that he was bound by the decision of Judge Hall in overruling the demurrer to the exceptions, and that he was bound to send down to the jury all the exceptions covered by the demurrer. In approving this ground the judge wrote in the margin as follows, viz.: " The defendant relied

on an order of Judge Hall overruling the demurrer to his (defendant's) exceptions to the award; and I held that this judgment was binding on the court. I cannot see why defendant should complain of a decision invoked by him."

Sixth. Because the court erred in sending to the jury that exception which charges that the said award was contrary to and against the evidence, that being a question exclusively for the court and not for the jury.

Seventh. Because the court erred in charging the jury that a mere error of judgment upon the part of the arbitrators, or a mere difference of opinion as to the effect of the evidence, or as to a doubtful question of law, are not grounds for setting aside an award, without explaining to them what kind of a mistake on the part of the arbitrators would be sufficient to set aside an award.

Eighth. Because the court erred in charging the jury, "that in reviewing this award, because you should differ with the arbitrators in the result to which they in their judgment arrived, is not, of itself, a sufficient ground to set it aside; nor because you would differ with these arbitrators in your opinion as to the effect of the evidence submitted to them, is that sufficient ground to set aside the award. It must appear to your satisfaction that the award is the result, the consequence, of a mistake made by the arbitrators. Neither can it be set aside because it may be contrary to evidence, if there is evidence to sustain it." This part of the charge is too vague and indefinite.

Ninth. Because the court erred in charging the jury "that where a party attacks an award upon the ground that the same was made under mistake of the arbitrators, the general merits of the controversy are not in issue, and it falls upon the party attacking the award to show the fact of the mistake; and it is not enough to show that the weight of the testimony is against the award, and thence infer a mistake."

Tenth. Because the court erred in failing to charge the jury as requested, that if the plaintiff failed to prove be-

fore the arbitrators that the mother of plaintiff was dead or married, or that plaintiff was of full age, then the plaintiff was not to have an award for any amount.

Eleventh. Because the court failed to instruct the jury as to the mode of computing interest in this case.

Twelfth. Because the verdict of the jury is contrary to evidence, and without evidence to support it, and against the charge of the court.

Which said motion was overruled by the court, and defendant excepted on all the grounds taken for new trial.

1. On the tender in testimony of the award to the jury, objection was made that it had not been proven, which was overruled, and this is excepted to. We see no error which can warrant a new trial. The case was pending on exceptions to the award, it was returned to court as an award, and the exceptions recognized it as what the arbitrators had done by excepting to the conclusions thereof.

2. There was no error in striking out the twelfth and fourteenth exceptions. It was not necessary before the parties could arbitrate to take an order of court therefor, though the cause was pending in court. Code, §2283, 4225; 15 *Ga.*, 473; 61 *Ga.*, 162. This disposes of the twelfth exception. The fourteenth exception does not allege any mistake in the arbitrators but merely error of judgment on contested facts, and nothing that could set aside the award if true. 61 *Ga.*, 515. This disposes of the first and second grounds of the motion for a new trial.

3. An award is very different from a verdict. Exceptions to the first are not tried as an appeal is from the second. To set aside an award the law is not the same in respect to the rules of evidence or the sufficiency thereof to maintain the finding. To set aside an award there must be evidence of clear mistake of law or fact, or a reference to chance or lot, or fraud in the arbitrators, or in the opposing party, or accident, or that the award is otherwise illegal. The courts favor awards and it is quite a difficult undertaking to set them aside. Code, §§2892–2893–4243; 34

*Ga.*, 560; 8 *Ga.*, 8, etc. Therefore the third and fourth grounds of the motion as corrected and certified by the judge, to-wit, that he decided "that any evidence was admissible and competent for the jury that would show or tend to show that the award made by the arbitrators was the result of either fraud, accident or mistake, or otherwise illegal; but that it was not competent by evidence to make a new case here that was not made before the arbitrators, and by that means to set aside the award," were properly overruled by the court. The true intent and meaning of this ruling of the court, as applied to the facts in this case and the testimony offered and rejected, is that when parties arbitrate their difficulties and disagreements, they must introduce before the arbitrators all their testimony on the points in dispute then and there; otherwise they will be concluded upon the questions in litigation, and not permitted to have a new trial of the case, as in appeals, or, as the judge termed it, to make a new case—try *de novo* as in new trials, but that new testimony is admissible to show accident, or mistake, or fraud, or other illegality in the parties or arbitrators or the proceedings. So understanding the ruling, it is approved and affirmed.

4. It is difficult to see how the judgment overruling the demurrer of defendant in error to the exceptions to the award made by plaintiff in error, could possibly hurt the plaintiff in error. Did he wish his own exceptions stricken, and no hearing to be had upon them? We suppose not. Therefore the fifth ground of the motion for a new trial was properly overruled.

5. If the exception to the award, in the language of the sixth ground of the motion, to-wit, "that the said award was contrary to and against the evidence," without further allegations of mistake or other thing which would vitiate it, should have been considered at all, it was proper to have the jury to pass upon it; and therefore the 6th ground should have been overruled.

6. The seventh and eighth grounds are exceptions to the

charge, based upon the idea that the judge was not careful in telling the jury what kind of mistake as to law or evidence would vitiate an award, after telling them that mere error of judgment on law or testimony would not authorize them to set it aside. The charge is set out in full in the record, and, taken altogether, seems to be sufficiently full on the subject of the difference between a clear mistake of a fact, or of the law, or mere difference of opinion between the arbitrators and the jury on a given subject.

7. There was no error in overruling the motion on the ninth ground. The party seeking to set aside the award *must* show the fact of the mistake, if he seeks to set it aside on that ground ; and the mere weight of testimony is *not sufficient* for the jury to infer mistake and set aside the award.

8. If the plaintiff in error desired a charge to the effect that there was no proof that the mother of defendant in error was married, he should have requested it in writing, or at all events in some form ; but it seems that she was married from evidence in the record—all over it.

9. There is evidence to support the verdict, and such being the case, and the presiding judge approving the finding, we adhere to the rule not to interfere. Interest appears to have been correctly computed under Code, §2603, at seven per per centum for six years, without compounding, and then six per centum, annually compounding thereon ; but counting it at seven per centum without compounding, and the difference is scarcely material.

On the whole we see no legal ground upon which we can base a judgment overruling that of the court below. The exceptions are rather loosely pleaded. There is no distinct allegation of fraud, accident or mistake, in a legal sense, made or proven, as set out in the bill of exceptions and error thereon assigned, and the judgment must be affirmed.    40 *Ga.*, 674 ; 41 *Ga..* 20, 548 ; 38 *Ga.*, 137 ; 61 *Ga.*, 162, 515.

Judgment affirmed.