## CANNON *v.* HUNT, administratrix.

1. Where a contract with regard to the erection of a building by a contractor
contains technical terms prescribing how he is to perform certain work, parol
evidence is admissible to explain the meaning of the language so employed ;
and if he has fully complied with his obligations under the contract, both as
to the materials used and the manner of doing the work, he is not to be held
accountable for unsatisfactory results.    If, on the other hand, the particular
kind of materials to be furnished and the manner in which the work is to be
done are not specified in the contract, he is at liberty, and is under a cor-
responding duty, to himself make a selection of proper materials and to per-
form the work in the manner in which it should be done.
2. In view of the evidence adduced at the trial of this case, the court erred in
charging the jury upon the contention that the contractor was delayed by the
act of the owner of the building from sooner commencing the erection thereof,
and would have completed it within the time limited had he not been pre-
vented from doing so by providential cause.
3. Whether or not lumber furnished by a contractor be just as "good and dura-
ble" as lumber of a different kind called for by his contract is not the proper
test for determining whether there has been a substantial compliance on his
part with the terms thereof.    On the contrary, the owner of the building is
entitled to damages where material different from that specified in the con-
tract is used in the construction of a building, even though the materials used
be in all respects equally as good as those the contractor agreed to furnish.
4. Where the issue on trial is whether a contractor has or has not complied with
the terms of his contract, proof that he enjoys a good reputation "for fair
and honorable dealings" is wholly irrelevant, and therefore inadmissible.
5. Where, after the expiration of the time within which the contractor stipulated
to complete the building, the owner enters into possession of the premises, as
it is his right to do, he can not be held to have waived all defects of which he
knew or could have known "by the exercise of ordinary care."

Argued October 11, — Decided October 30, 1902.

Action on contract.    Before Judge Fite.    Whitfield superior court.    June 9, 1902.

*R. J. & J. McCamy*, for plaintiff in error.
*Shumate & Maddox* and *F. S. Yaeger*, contra.

LITTLE, J.    The nature of this case is disclosed by the report made of it when it was here at the March term, 1901.    See 113 *Ga.* 501.    The jury having returned another verdict against Mrs. Cannon, the owner of the building which Hunt, the plaintiff's intestate, had undertaken to erect according to certain plans and specifications, she made a motion for a new trial, which was overruled, and she excepted.    As the case must undergo still another investigation in the court below, we shall endeavor to dispose of all questions now presented which are likely to influence the result of the next hearing.

1. At the last trial, Mrs. Cannon appears to have strenuously pressed her contention that " by reason of the imperfect condition of the roof, and the rain leaking through the same," goods and merchandise which she had placed in the building had been damaged to the amount of three hundred dollars, and that it would cost a like amount to put the roof in the condition called for by the contract, which embraced the following stipulation:    " All tin used to be N. & G. Taylor Company's old style redipped tin best quality, roof to have standing seams not less than three fourths, the sheets of tin to be laid the narrow way with locked and soldered joints well nailed in place by metal cleats and barbed nails."    One of the issues which arose was, whether or not, in view of this stipulation, it was the duty of the contractor to not only lock but also solder all cross-seams, and the trial judge allowed the plaintiff to introduce the testimony of experts to the effect that cross-seams were not usually soldered, and were not to be confounded with " locked and soldered joints," soldered joints being used only in fittings " around chimneys and scuttle-holes," and in making connections " onto valleys where they run diagonally along."    We have no hesitation in saying this testimony was properly admitted under the rule that parol evidence is competent to explain the meaning of technical terms employed in contracts which have been reduced to writing.    It was insisted by Mrs. Cannon that even if the above-quoted stipulation did not impose upon the contractor the express obligation of soldering all cross-seams, he should neverthe-

less have done so in view of the fact that the roof was unusually flat, because the contract contained this additional stipulation : "All work and materials to be the best of their several kinds, suitable in all respects for the purpose for which they are used." In instructing the jury as to this branch of the case, his honor charged, in substance, that they were not to consider at all the slant of the roof, but should confine their attention to the determination of the question whether or not the materials used in covering the roof were of the kind specified in the contract, and the work was done in the manner therein pointed out. This charge was precisely adjusted to the defense set up in the defendant's answer and the facts brought to light on the trial. The complaint urged in her pleadings was, not that the slant of the roof was different from that called for by the specifications, but that "the roofing on the house was to be well soldered according to the contract, and that plaintiff's intestate did not have the roof soldered at all." So far as the evidence disclosed, the slant of the roof was neither more nor less than that fixed by the plans drawn by the architect whom Mrs. Cannon employed ; and if the slant of the roof should have been greater, or the covering of it should have been done in a manner different from that which he prescribed, he, and not the contractor, was responsible for the defective roof, if the contractor fully complied with the terms of his contract both as to materials used and workmanship. Whether he did or did not do this was the sole question for determination by the jury.

On the other hand, where plans and specifications do not prescribe a particular kind of material to be used for a given purpose and in a specified way, but in general terms impose upon the contractor the obligation of bringing about given results, he is under the duty of selecting the proper and usual materials and deciding for himself the precise manner in which they shall be used in order to comply with his contract to produce a workmanlike job. The trial judge, in charging upon another feature of the controversy, appears to have overlooked the distinction just indicated between specific directions and mere "general orders." It appears that the plans called for a certain tower, of a given radius, to be built of brick, but neither the shape nor size of the brick was specified. In point of fact ordinary brick was used, and the defendant contended that brick of a given size and shape, specially adapted

to such purposes, should have been selected by the contractor. As to whether or not this contention was well founded the evidence was conflicting. Nevertheless his honor charged the jury: "The fact that the tower was not built of round brick, but was built of straight brick, need not be considered by you. The question is, and the only question I submit you as to the tower is, whether or not is was done in a workmanlike manner. Was it put up in a workmanlike manner?. If so, notwithstanding straight brick were used instead of round brick, the defendant would not be entitled to recover by reason of that fact." The criticism made upon this charge by counsel for Mrs. Cannon is that the court should not have assumed, as matter of law, "that good workmanship did not require round brick in a round tower," this being "a question of fact for the jury, the more especially so as the testimony of plaintiff's brick contractor shows that he first attempted to construct the tower of round brick, but owing to the fact that its radius did not correspond with the brick he got, and that it was inconvenient to get others of the proper radius," he substituted "the square brick." It requires, we think, no argument to show that this criticism is just.

2. When the case made its former appearance before us, we ruled explicitly that inclement weather such as is frequently experienced in this climate is not to be regarded as "the act of God" in the sense in which that phrase is to be judicially understood in determining whether a party to a contract such as that under consideration should be excused for non-compliance therewith simply because he was prevented from performing his obligations in the premises by "rains and freezes" which were natural and to be expected. In view of this express ruling and of the evidence introduced on the trial now under review, the presiding judge erred in submitting to the jury the question whether or not the plaintiff had supported by proof her contention that her intestate was prevented by "the act of God" from sooner completing the building. It was likewise erroneous to charge upon the contention of the plaintiff that the delay in commencing work upon the building was brought about by the failure of the owner of the premises to comply with an undertaking on her part to make needful excavations. While it does appear that these excavations were not made until some time after the execution of the contract, there was no evi-

dence which would have warranted a finding by the jury that the contractor was desirous of beginning work sooner than he did and would have done so had he not been delayed by the plaintiff's failure to comply with her obligations under their agreement.

3. It was expressly stipulated in the contract that the contractor was to use only " 5/8 inch beaded yellow pine first standard ceiling " and first and second grade " long-leaf yellow pine flooring, not over 3 and 1/4 inches wide.". He actually furnished a much less expensive and altogether different kind of pine ceiling and flooring. As to this matter the court charged the jury that notwithstanding he may have used lumber of a different kind from that called for by the specifications, yet if the lumber furnished by him was "as good and durable for that specific work, then that would be a substantial compliance with that part of the contract, and no damage on that account should be allowed." This charge was clearly erroneous, for it was the undoubted right of the owner of the building to recover damages for failure to furnish the kind of material specified, even though that used was in every respect equally as good ; and furthermore, the "durability" test applied by the court left entirely out of view the difference in finish and appearance, if any, between the two kinds of lumber, and other equally important considerations, such as market price, etc. *Means* v. *Subers,* 115 *Ga.* 371.

4. Over the objection of the defendant, the court allowed the plaintiff to show that the reputation of the contractor "for fair and honorable dealings" was good. What relevancy this evidence had to any issue on trial we are wholly at a loss to perceive. On the argument here, counsel for the defendant in error explained that this evidence was offered and admitted on the idea that the character of the contractor was put in issue by proof introduced by the defendant to the effect that he had made a breach of his contract by using material inferior to that he had agreed to furnish. It can make no difference for what purpose the evidence was allowed to come in. The owner contracted for certain material in the construction of the house; the substitution of a different material was a breach of the terms of the contract; the comparative character of the substituted material was admissible as affecting the amount of damage sustained by such breach ; but the character of the contractor was not in issue, and the evidence was wholly inadmissible.

5. Complaint is made of another charge of the court, to the effect that if Mrs. Cannon, or her husband acting as her authorized agent, "accepted the house after it was completed, . . with full knowledge of all the defects, or ought to have known of the defects by the exercise of ordinary care, then she" would not be entitled to "recover any damages at all." As there has never been any final adjustment between the respective parties at interest which amounted to a compromise and settlement of their differences respecting the manner in which the contractor performed his contract, it is only necessary to say that we concur in the view entertained by the plaintiff in error that the charge just referred to was erroneous, "because there is no evidence that defendant's husband had any right to waive any defects; because there is no evidence that he knew of any of these defects when the house was turned over, nor was he bound to the exercise of ordinary care to find defects, as she had a right to rely on her contract;" and "because, further, if defendant had known in full of all defects, she had a right to accept the house and have a reduction in price for such defects." Indeed, as soon as the time elapsed within which the contractor had stipulated to finish the building, she had a right to enter into possession of the premises and hold him to account for non-compliance with his undertakings under the contract.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*