STATE HIGHWAY DEPARTMENT OF GEORGIA *v.* MAC-DOUGALD CONSTRUCTION COMPANY.

No. 12854. OCTOBER 12, 1939.
ADHERED TO ON REHEARING DECEMBER 16, 1939.

*Lamar Murdaugh, Beck, Goodrich & Beck, D. C. Chalker,* and *C. E. Jackson,* for plaintiff in error.

*MacDougald, Troutman & Arkwright, Hirsch & Smith,* and *Harllee Branch Jr.,* contra.

BELL, Justice. MacDougald Construction Company filed a suit against the State Highway Department of Georgia, to recover about $7,000, claiming that in the performance of a contract for surface treatment of a road in this State it had been required by the engineer of the State Highway Department to use material of a kind different from that specified in the contract, and more expensive. The suit was dismissed on general demurrer, and the plaintiff excepted. The Court of Appeals reversed that judgment, sustaining the plaintiff's contention as to the kind of material contemplated by the contract, and holding further that a provision in the contract that "a decision of the State highway engineer upon any question connected with the execution of this agreement . . shall be final and conclusive" did not confer authority upon the engineer to construe the contract for the purpose of determining the kind of material required by its terms. The omitted portion of the stipulation regarding authority of the engineer is not material in the present case. On application of the State Highway Department the writ of certiorari was granted. For a full state-

ment of the facts, see report of the decision under review, *Mac-Dougald Construction Co.* v. *State Highway Department*, 59 *Ga. App.* 708 (2 S. E. 2d, 197). The controversy arose out of the use of the word "aggregate" as descriptive of material to be used by the contractor in performance of the contract. According to the plaintiff's petition, the term as used in reference to construction of roads is a general term designating a solid material which is bound into a solid mass by cement, asphalt, tar, or other binding elements. The petition alleged that "aggregate" may consist of stone; that this type of aggregate is regarded as the premier road-building material of the world, and is in more general use than any other kind of aggregate; and that when "aggregate" is specified, contractors generally consider that stone aggregate, and not the more infrequently used material, such as gravel or slag, is intended. The various writings constituting the contract used only the general term "aggregate," except that in standard general specifications of file in the office of the State highway engineer, and made by reference a part of the agreement, the term "slag" was used in the specifications relating to "construction methods." The plaintiff alleged in effect that the contract, considered as a whole and in the light of circumstances, contemplated the use of *stone* aggregate, but that a difference arose between the plaintiff and the highway engineer, and that the engineer decided and so notified the plaintiff that under the terms of the agreement slag was required. This type of aggregate is more expensive than stone aggregate, and the plaintiff proceeded to use it only after protest, and notice that a claim would be made for the difference in cost.

■ The defendant in certiorari moved to dismiss the writ, on the ground that it was improvidently granted. The insistence is that the case does not involve any question of public gravity and importance. It is contended that the petition shows upon its face that it is based upon a solitary contract made in pursuance of plans and specifications no longer used by the highway department, and that no similar case is likely to arise. It is insisted also that the ruling of the Court of Appeals on the effect of the stipulation regarding decision by the highway engineer "upon any question connected with the execution" of the contract does not bring the case within the rule as to public gravity and importance. The writ of certiorari was granted before adoption of the new rules

upon the subject. (187 *Ga.* 841, 843, 931). We are inclined to agree to the first contention, but we regard the stipulation concerning "decision" by the highway engineer and the exceptions to the rulings thereon as being sufficient to justify retention of the case for decision. It is to be inferred from the motion to dismiss and from the briefs that this stipulation is generally contained in contracts made by the State Highway Department for the construction of roads, and we are of the opinion that the question presented as to its meaning and effect is a matter of public gravity and importance. Accordingly, the motion to dismiss the writ of certiorari is denied.

■ We deem it unnecessary to pass upon the rulings contained in the first and second divisions of the decision of the Court of Appeals. Regardless of these rulings, we are of the opinion that the petition did not state a cause of action and was properly dismissed by the trial court. According to our view of the case, it does not turn upon an interpretation of the contract without reference to the decision of the engineer, but depends upon the effect that should be given to such decision, as applied to the contract and the specifications. The contract for the construction of the road contained the following stipulation: "The decision of the State Highway Engineer upon any question connected with the execution of this agreement . . shall be final and conclusive." A difference arose as to whether the contract, in specifying "aggregate" as one of the materials to be used, would permit the use of stone aggregate, or whether some other kind of aggregate, as slag, must be used. It is true, this was a matter depending in a manner on construction of the contract, but it involved only an incidental construction for the purpose of determining the class or kind of material required by the contract and the specifications, and being a question calling for decision during the progress of the work, it fell within the authority conferred by the parties upon the engineer. As to such matters as he was authorized to decide, the parties agreed that his decision should be final and conclusive; and in the absence of fraud, or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, any decision made by him within the scope of his authority must be treated as final and conclusive, as the parties declared it should be. They agreed to the stipulation, as they were free to do, and

the question is, what did they mean or intend thereby? We have the words "final and conclusive," whereas without these or similar words a very different case might have been presented; and while in this case the engineer was authorized to determine "any question connected with the execution" of the contract, that is, the performance of it, the authority of such an arbiter will depend in each case upon the terms of the stipulation assented to by the parties. Compare the general language italicised in the next succeeding paragraph.

There are many decisions to the effect that where parties to a building or construction contract designate a person who is authorized to determine questions relating to its execution, and stipulate that his decision shall be binding and conclusive, both parties are bound by his determination of *those matters which he is authorized by the contract to determine,* except in case of fraud, or of such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment. In an editorial note in 54 A. L. R. 1255, following the report of Zimmerman *v.* Marymor, 290 Pa. 299 (138 Atl. 824, 54 A. L. R. 1252), decisions by the United States Supreme Court and courts of 26 States are listed as subscribing to the doctrine, and only the courts of Indiana are mentioned as holding to the contrary (54 A. L. R. 1270). We have examined many of these decisions, including one or more from each jurisdiction, and find that in the main they sustain the editor's statement. Indeed, a careful study of the authorities compels the conclusion that here is one rule of almost universal acceptation. See also City of Wauwatosa *v.* Jacobus & Winding Concrete Construction Co., 223 Wis. 401 (271 N. W. 21, 110 A. L. R. 131, Anno. p. 137).

In *Grant* v. *Savannah, Griffin & North Alabama R. Co.,* 51 *Ga.* 348, this court had before it a contract between a railroad company, and a contractor, for bridge, culvert, and repair work. It provided that the chief engineer of the company should be the inspector of the work, and determine when the contract had been complied with; that all disputes and differences should be adjusted by him, and his decision should be conclusive without further recourse or appeal; that should the work, in the opinion of the engineer, not progress in such manner as to insure its completion by the time stipulated, the engineer, after giving ten days notice,

might proceed to have the work executed by hiring men, or by subcontracting such portions thereof as he might deem necessary to insure its completion, at the expense of the contractor. In the decision it was said: "It was . . stipulated in the contract that the chief engineer of the company, or some person or persons appointed by him, should be the inspector of the work, and determine when the contract had been complied with according to its just and fair interpretation, and the amount of the same, and all disputes and differences under it to be adjusted by him, and his decision shall be *conclusive,* without further recourse or appeal. It was the clear intention of the parties, as expressed in this contract, and such is its legal effect, that the engineer of the company should be the arbitrator to determine when the contract had been complied with by either party, and to adjust all disputes and differences between them under it, and his decision was to be conclusive upon them, whether the same related to the performance of the contract by the plaintiffs or the defendant. Their chosen arbitrator, by the express terms of their contract, was to determine all disputes and differences between them arising under it, without further recourse or appeal; that is to say, the engineer of the defendant was to be the arbitrator to determine when the contract had been complied with according to its just and fair interpretation, and the amount of the same, and all disputes and differences under it were to be adjusted by him; and his decision should be conclusive, without further recourse or appeal; and when said arbitrator had determined that the contract had been complied with by either party thereto, and the amount to be paid for the work done under it, the decision or award of such arbitrator was as conclusive and binding upon the parties to that contract as the decision and award of any other arbitrator or arbitrators would be under the law, and could not be attacked or set aside, unless for fraud or other grounds of illegality recognized for that purpose." In that case, the decision of the engineer was held binding on the railroad company.

In *Green* v. *Jackson,* 66 *Ga.* 250, a city engineer was given in a contract authority to decide the amount or quantity of several kinds of work to be paid for under the contract, and the amount of compensation to be paid therefor by the city for different kinds of work. Prices were fixed by the contract, and it was especially agreed that for stated excavation, to be classified by the engineer, the con-

tractor should be paid from 40 to 80 cents per cubic yard, in addition to other prices, at the engineer's discretion. The contract further provided that when the work was completed the engineer should classify it and state his estimate, and that his estimate and decision should be final and conclusive. It was held by this court that the award as made by the engineer was binding on the parties, in the absence of fraud. In *Elmore* v. *Thaggard,* 130 *Ga.* 701 (3) (61 S. E. 726), it was held: "The plaintiff having brought suit, on a building contract and a bond to secure performance on the part of the contractors, to recover damages and the expense incurred in furnishing material and labor necessary to the completion of the building after the termination of the employment of the contractors on account of their failure to perform their part of the agreement, the petition was open to attack by general demurrer, . . inasmuch as it did not show that the plaintiff's claims for expenses incurred and damages sustained through the default of the contractors had been audited and certified by the architect, or any reason why such a certificate was not obtained, the contract expressly providing that 'The expense incurred by the owner as herein provided, either for furnishing materials or for furnishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate shall be conclusive upon the parties.' The certificate provided for in the paragraph quoted, or a valid reason for not obtaining the same, was a condition precedent to the plaintiff's right to recover." To the same general effect see *Southern Mfg. Co.* v. *R. L. Moss Mfg. Co.,* 13 *Ga. App.* 847 (2) (81 S. E. 263); *Savannah Lighting Co.* v. *Fidelity & Deposit Co.,* 21 *Ga. App.* 758 (95 S. E. 113); *Board of Drainage Commissioners* v. *Williams,* 34 *Ga. App.* 731 (4), 734 (131 S. E. 911); *Morris* v. *Peachtree Heights Park Co.,* 38 *Ga. App.* 303 (143 S. E. 909).

The same principle was applied in Kihlberg *v.* United States, 97 U. S. 398 (24 L. ed. 1106), although the case did not involve a building or construction contract. It was held that where, in a contract for the transportation of government stores, it was agreed that distances should be ascertained and fixed by the chief quartermaster, in the absence of fraud or bad faith on his part his action in the premises was conclusive upon the contractor and the government. In the opinion it was said: "The contract, which is the

foundation of this action, provides that transportation shall be paid 'in all cases according to the distance from the place of departure to that of delivery.' But no specific rule is prescribed for the ascertainment of distances. The contract is silent as to whether they shall be estimated by an air line, or by the route usually traveled by contractors in conveying government stores, or by the road over which troops ordinarily marched when going from one post or station to another. The parties, however, concurred in designating a particular person, the chief quartermaster of the District of New Mexico, with power not simply to ascertain but to fix the distances which should govern in the settlement of the contractor's accounts for transportation. The written order of General Easton to the depot quartermaster at Fort Leavenworth was an exertion of that power. He discharged a duty imposed upon him by the mutual assent of the parties. The terms by which the power was conferred and the duty imposed are clear and precise, leaving no room for doubt as to the intention of the contracting parties. They seem to be susceptible of no other interpretation than that the action of the chief quartermaster, in the matter of distances, was intended to be conclusive. The difference between his estimate of distances and the distances by air line, or by the road usually traveled, is not so material as to justify the inference that he did not exercise the authority given him with an honest purpose to carry out the real intention of the parties, as collected from their agreement. His action can not, therefore, be subjected to the revisory power of the courts without doing violence to the plain words of the contract. Indeed, it is not at all certain that the government would have given its assent to any contract which did not confer upon one of its officers the authority in question. If the contract had not provided distinctly, and in advance of any services performed under it, for the ascertainment of distances upon which transportation was to be paid, disputes might have constantly arisen between the contractor and the government, resulting in vexatious and expensive and, to the contractor oftentimes, ruinous litigation. Hence the provision we have been considering. Be this supposition as it may, it is sufficient that the parties expressly agreed that distances should be ascertained and fixed by the chief quartermaster; and in the absence of fraud or such gross mistake as would necessarily imply

bad faith, or a failure to exercise an honest judgment, his action in the premises is conclusive upon the appellant as well as upon the government. The contract being [in this respect] free from ambiguity, no exposition is allowable contrary to the express words of the instrument." That decision was followed in Sweeney v. United States, 109 U. S. 618 (3 Sup. Ct. 344, 27 L. ed. 1053), involving a contract for the building of a wall. In Chicago &c. Co. v. Price, 138 U. S. 185 (11 Sup. Ct. 290, 34 L. ed. 917), it was held that where the amount of work in building a railroad was, under the terms of the contract, to be measured and ascertained by the chief engineer of the road, whose decision was to be final, his decision was binding and conclusive upon the parties, unless there was fraud on the part of the engineer or such gross mistake by him as to imply bad faith; and that his mere incompetency or negligence would not authorize the railroad company to go behind his estimates. In United States v. Gleason, 175 U. S. 588 (20 Sup. Ct. 228, 44 L. ed. 284), the court held in effect that the judgment of an engineer, to whom a contract referred the determination of the question of performance, could be revised by the court only upon allegation and proof of bad faith, or of mistake or negligence so gross as to justify an inference thereof.

So the mere existence of error in the arbiter's conclusion will not, without more, open the matter for judicial examination. Nor will the fact that the chosen umpire is an officer or employee of one of the contracting parties destroy the force of his decision, the relationship being stated in the contract or known to the parties at the time of his selection. Edwards v. Hartshorn, 72 Kan. 19 (82 Pac. 520, 1 L. R. A. (N. S.) 1050); Norcross v. Wyman, 187 Mass. 25 (72 N. E. 347). The reason underlying the rule is that the parties anticipate that some differences may arise between them in the performance of the contract, and for the purpose of avoiding litigation or delay they make the engineer or architect, as the case may be, an exclusive arbitrator of such differences. When such a stipulation is made, the decision of the agreed referee can ordinarily be attacked only in the same manner as that of any other arbitrator. 9 Am. Jur. 26, § 36; 3 Am. Jur. 961, § 137; 6 C. J. 234-5, 246-256, §§ 85, 87, 88, 103-108. On the general subject see Martinsburg & Potomac Railroad Co. v. March, 114 U. S. 549 (5 Sup. Ct. 1035, 29 L. ed. 255); Shriner v. Craft, 166 Ala.

146 (51 So. 884, 28 L. R. A. (N. S.) 450); Empson Packing Co. v. Clawson, 43 Colo. 188 (95 Pac. 546); Boettler v. Tendick, 73 Tex. 488 (11 S. W. 497, 5 L. R. A. 270); Schoenfeld v. DePuy (Tex. Civ. App.), 58 S. W. (2d) 574; Marsch v. Southern New England R. Cor., 230 Mass. 483 (120 N. E. 120); Dana v. Dana, 260 Mass. 460 (157 N. E. 623); Sullivan v. Wingerath, 203 Fed. 460; McGuire v. Rapid City, 6 Dak. 346 (43 N. W. 706, 5 L. R. A. 752); City Street Improvement Co. v. Marysville, 155 Cal. 419 (101 Pac. 308, 23 L. R. A. (N. S.) 317); Hot Springs Railroad Co. v. Maher, 48 Ark. 522 (3 S. W. 639); Hewitt v. Buchanan (Tex. Civ. App.), 4 S. W. 169, 174; Handy v. Bliss, 204 Mass. 513 (90 N. E. 864, 134 Am. St. R. 673); Ross v. McArthur, 85 Iowa, 203 (52 N. W. 125); Faunce v. Burke, 16 Pa. 469 (55 Am. D. 519); Shepard's Chemical Co. v. O'Brien, 173 N. C. 618 (92 S. E. 594); and citations in 54 A. L. R. 1256-8, and in 110 A. L. R. 137-144. Attention is also called to the very clear and concise statement in 9 Am. Jur. 24-29, §§ 36-38.

The present case differs on its facts from *Mallard* v. *Moody,* 105 *Ga.* 400 (31 S. E. 45). The contract there under consideration provided that "Should any difference of opinion arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by the architect, and his decision shall be final and conclusive." The agreement for construction of the building required in plain and unmistakable terms that the contractor should install a heating apparatus. This court held that the stipulation as to decision by the architect did not authorize him to decide that the contractor was not bound by the contract to put in a heating apparatus, and that a certificate afterwards made by him to the effect that the work had been completed according to the contract was not binding upon the owner as to this matter. In the opinion it was said: "To give him such power would be to allow him to make a new contract for the parties. *He could construe the contract and decide what it meant, or determine the nature and character of the work or materials required,* but he could not eliminate or abrogate any of its terms. If the parties did agree upon these specifications and the clause requiring the heating apparatus was a part of them, the decision of the architect, to the effect that the contractor was not bound to put in heating apparatus, entirely eliminated this clause, and to that ex-

tent varied the contract made by the parties." (Italics ours.) While the court did not in terms so state, yet under the facts of the case the conclusion of the architect, if considered within the scope of his authority, was so grossly erroneous as to imply bad faith or· a failure to exercise an honest judgment. Or the court might have thought the architect *exceeded* his authority, since he was authorized only to settle differences respecting the true construction or meaning of the "drawings and specifications."

In *Cannon* v. *Hunt,* 113 *Ga.* 501 (38 S. E. 983), s. c. 116 *Ga.* 452 (42 S. E. 734), the contract did not contain a stipulation to the effect that the decision of the architect should be "final and conclusive." Accordingly, it was held by this court that the conclusion of the architect was not binding on the parties. The same was true of the contract considered by the United States Supreme Court in Mercantile Trust Co. *v.* Hensey, 205 U. S. 298 (27 Sup. Ct. 535, 51 L. ed. 811). Nor does *City Council of Augusta* v. *Loftis,* 156 *Ga.* 77 (118 S. E. 666), have. any relevancy in the present consideration. While the decision made reference to authority conferred upon the plumbing inspector by a city ordinance, the case did not involve a contract.

The Court of Appeals quoted the following statement from Donnelly's Law of Public Contracts, 349 : "The stipulation in public contracts that all questions and differences which may arise between the public body and the contractor shall be referred to the engineer, and his decision shall be final and conclusive, does not . give the engineer jurisdiction to determine that work, which is not done under the contract or specifications, and which is not governed by them, was performed under and is controlled by the agreement, and his decision to that effect is not binding." An examination of that text shows that it was based upon only two decisions, Salt Lake City *v.* Smith, 104 Fed. 457, and United States *v.* Smith, 256 U. S. 11 (41 Sup. Ct. 413, 65 L. ed. 808). The first of these cases dealt with a contract for construction of a six-mile conduit over comparatively level surfaces. The line or route was afterwards changed for about a mile. The changed portion of the route required excavation through a different terrain, necessitated building a concrete dam over a creek, and involved much additional labor and expense. These changes were made under the direction of the engineer, who by the strict language of the

contract might have had authority to order them. The city defended on the ground that it had paid for the work at the contract prices, or at prices fixed by the engineer for matters not covered by the contract; and that under a provision of the contract to the effect that the decision of the architect upon all such matters would be final and conclusive, the city was not further liable. The court held substantially as indicated by Donnelly, but in so doing stated with emphasis that the changes were so "radical" as not to fall within the scope of the architect's authority, but constituted new and different work, not connected with the contract, and, hence, not within the contemplation of the parties. In the opinion, the court said: "It is as clear as the sun at noon in a cloudless sky that the minds of these parties never met upon such a proposition, and that they never contemplated or intended to make any such contract." The decision by the United States Supreme Court, cited by Donnelly, was to the same general effect, though in language more temperate. In that case the contract called for the removal of clay, sand, gravel, and boulders all in unknown quantities. Officers who were given authority to supervise the contract insisted upon locating points where the dredging was to be done. The material, or a large part of the material, to be removed from this point proved to be limestone rock, or limestone bedrock, and required more labor and expense. The court held that the action of the officers in requiring its removal as within the agreement was against the "explicit declaration" of the contract as to the material to be excavated and its price, and that the contractor was entitled to recover for additional work done. Without approving or disapproving the statement by Donnelly, it is sufficient to say that the present case is neither within the statement nor like the cases cited for it. This is not a case where an engineer has decided that work which *was not* within the terms of a contract was yet performed under and is controlled by it (compare Ætna Indemnity Co. *v.* Waters, 110 Md. 673, 73 Atl. 712, 713); but it is simply a case in which the engineer construed the contract, including the specifications, merely for purpose of determining the kind or class of material required thereby, as to which the contract did not so clearly and specifically make its own classification as to imply fraud in the decision of the engineer. On this point the case differs from Williams *v.* Chicago &c. Ry. Co., 112 Mo. 463 (20 S. W.

631, 637, 34 Am. St. R. 403), in which as to a *part* of the work in controversy *classification* was definitely fixed by the contract and was not left to the judgment of the engineer.

For other decisions involving awards or the like which were held invalid, though for reasons not present in the instant case, see United States *v.* Utah &c. Stage Co., 199 U. S. 414 (26 Sup. Ct. 69, 50 L. ed. 251) ; Freund *v.* United States, 260 U. S. 60 (43 Sup. Ct. 70, 67 L. ed. 131) ; Wood *v.* Fort Wayne, 119 U. S. 312 (7 Sup. Ct. 219, 30 L. ed. 416) ; Snead &c. Iron Works *v.* Merchants Loan &c. Co., 225 Ill. 442 (80 N. E. 237, 9 L. R. A. (N. S.) 1007) ; Camp *v.* Neufelder, 49 Wash. 426 (95 Pac. 640, 22 L. R. A. (N. S.) 376) ; Venable *v.* United States, 114 Fed. 763 ; Satoris *v.* Utah Construction Co. (C. C. A.), 21 Fed. (2d) 1. As applied to a stipulation that the decision of the engineer upon any question "connected with the execution" of the contract shall be "final and conclusive," we deduce from the authorities the following propositions: (1) The decision of the engineer is binding on the parties, where he acts within the authority conferred by the contract, and his decision is not dishonest in fact or so grossly erroneous as to imply bad faith or· failure to exercise an honest judgment. (2) The mere fact that his award is erroneous or even unreasonable, in the opinion of the court, is not enough to impeach it. Before it may be disregarded by the courts, it must be either fraudulent in fact, or so palpably erroneous or unreasonable as to be self-impeaching, in view of the terms of the contract and the circumstances. Compare *Dyer* v. *Marlin,* 132 *Ga.* 445 (64 S. E. 475). (3) Where such an arbiter *exceeds his authority* and passes upon a matter not contemplated by the parties, that is, a matter not "connected with the execution" of the particular contract, his action is not within the contractual submission, and is not binding. In such case it is immaterial whether he acts from fraudulent motive or what may be the implications. 9 Am. Jur. 27, § 36. (4) A contract may be so patently clear and explicit on a given point that any construction different from its obvious and exclusive meaning would constitute a gross mistake or error, within the foregoing principles; but if there is room for construction, the engineer's decision thereon is subject to review only upon the foregoing principles. (5) Where a public officer or agency is authorized to make a stipulation such as that under

consideration, there is no reason why it should not be enforced in reference to public work, to the same extent as a contract between individuals regarding a private subject-matter. The authorities cited, many of which relate to contracts for public work, make no such distinction.

It is insisted in this case that the stipulation would not authorize the engineer to construe the contract, and some decisions have been cited which apparently support this contention. See King Iron Bridge Co. *v.* St. Louis, 43 Fed. 768; Lewis *v.* Ry. Co., 49 Fed. 708; Dock Contractor Co. *v.* New York, 296 Fed. 377; McGillivray Construction Co. *v.* Hoskins, 54 Cal. App. 636 (202 Pac. 677); Uvalde Contracting Co. *v.* New York, 160 App. Div. 284 (145 N. Y. Supp. 604); Croton Falls Const. Co. *v.* New York, 168 App. Div. 261 (154 N. Y. Supp. 76); Davis *v.* United States, 82 C. Cls. 334; Guarantee Title & Trust Co. *v.* Willis, 38 Ariz. 33 (297 Pac. 445). In several of these decisions it is not clear whether the courts construed the stipulations respectively as not intending to confer such authority upon the designated arbiter, or whether the rulings were based upon the theory that any attempt by the parties so to do would be invalid. Whatever may have been the bases of such decisions, we do not hesitate to hold that under the stipulation here in question the architect was authorized to construe the contract, along with the specifications considered as a part of it, for the incidental purpose of determining the kind or class of material required; and such being the case before us, no decision is or should be made as to whether he would have been authorized to construe it for other and more general purposes. See in this connection, Norcross *v.* Wyman, supra; Marsch *v.* Southern New England R. Cor., supra; Keachie *v.* Starkweather Drainage Dist., 168 Wis. 298 (170 N. W. 236); Todd Dry Dock &c. Cor. *v.* New York, 54 Fed. (2d) 490, 492; Kihlberg *v.* United States, 97 U. S. 398 (24 L. ed. 1106); Merrill-Ruckgaber Co. *v.* United States, 241 U. S. 387 (36 Sup. Ct. 662, 60 L. ed. 1058); Goltra *v.* Weeks, 271 U. S. 536 (46 Sup. Ct. 613, 70 L. ed. 1074); United States *v.* Mason & Hanger Co., 260 U. S. 323 (43 Sup. Ct. 128, 67 L. ed. 286); Dock Contractor Co. *v.* New York, 296 Fed. 377; Chas. S. Wood & Co. *v.* Alverd & Swift, 232 App. Div. 603 (251 N. Y. Supp. 35), affirmed 258 N. Y. 611 (180 N. E. 354).

Although construction of a contract may be a pure question of

law, this within itself is not a v did objection, because questions of law may be submitted to arbitration. In such case, the decision of the arbitrator is binding in the absence of fraud or corruption, even though it may be erroneous. *Forbes* v. *Turner*, 54 *Ga.* 252; *Hardin* v. *Almand*, 64 *Ga*. 582; *Benton* v. *Singleton*, 114 *Ga.* 548, 556 (40 S. E. 811, 58 L. R. A. 181); Deshons *v.* Scott's admr., 202 Ky. 575 (260 S. W. 355); Pierce Steel Pile Cor. *v.* Flannery, 319 Pa. 332 (179 Atl. 558, 104 A. L. R. 706); 3 Am. Jur. 841, § 11; 6 C. J. S. 159, 240, §§ 10, 95; 5 C. J. 27, § 28.

We do not overlook the rule that a stipulation of this nature is subject to strict construction; nor do we fail to note that according to numerous decisions a general agreement to arbitrate *all questions* which may arise in the execution of a contract, both as to liability and loss, should be treated as against public policy and void, as an attempt to oust the courts of jurisdiction. *Parsons* v. *Ambos,* 121 *Ga.* 98 (48 S. E. 696); *Adams* v. *Haigler,* 123 *Ga.* 659 (51 S. E. 638); Williams *v.* Branning Mfg. Co., 154 N. C. 205 (70 S. E. 290, 47 L. R. A. (N. S.) 337); Jefferson Fire Ins. Co. *v.* Bierce, 183 Fed. 588; W. H. Blodgett Co. *v.* Bebe Co., 190 Cal. 665 (214 Pac. 38); McCullough *v.* Clinch-Mitchell Const. Co., 71 Fed. 2d, 17; Duval County *v.* Charleston Engineering &c. Co., 101 Fla. 341 (134 So. 509); White *v.* Abbott, 188 Mass. 99 (74 N. E. 305); Bauer *v.* International Waste Co., 201 Mass. 197 (87 N. E. 637); Cochrane *v.* Forbes, 257 Mass. 135 (153 N. E. 566); Dana *v.* Dana, 260 Mass. 460 (157 N. E. 623). The decisions so holding generally distinguish such all-embracing stipulations from those relating only to auxiliary or ancillary questions, and sustain agreements of the latter character. See authorities just cited; also 3 Am. Jur. 855, 856, 859-865, §§ 28, 30, 31, 33-36; 5 C. J. 43, § 69. In the present case we are not concerned with such an all-inclusive agreement, and accordingly should express no opinion as to the validity of a stipulation of that nature. Even assuming that agreements for settlement of prospective disputes should be sustained or applied only as related to such incidental or subordinate questions as price, value, measure, quantity, quality, classification, and similar questions, the authority conferred by the present agreement was actually exercised only in relation to the quality or classification of material to be used in performance of the contract, and under the facts of the case the award *as*

*made* should be held binding. McCullough *v.* Clinch-Mitchell Const. Co., 71 Fed. (2d) 17; Duval County *v.* Charleston Engineering &c. Co., 101 Fla. 341 (134 So. 509); 3 Am. Jur. 856, § 30. It appears from the petition that "aggregate" is a general term. There are several kinds. The engineer did not require the use of some *other material as a substitute for aggregate,* but merely directed the use of a *different kind of aggregate* from that proposed by the contractor. The contract did not say in plain and explicit terms that *stone* aggregate might be used, and both kinds were embraced within the general term "aggregate" as employed in the main agreement. Whether in these circumstances, without more, the use of stone aggregate might have been optional with the contractor, there remained the question of quality or classification to be determined by the engineer, and the case as presented *to the court* did not depend upon a construction of the agreement as an original proposition.

It is contended by the plaintiff that the reference to slag, contained only in specifications as to construction *methods,* should have gone for naught in deciding as to the kind of *material* that was intended. While, if construction of the contract had fallen to the court in the first instance, the mention of slag solely as indicated might not have justified the conclusion that this type of aggregate was mandatory (compare Moreing *v.* Weber, 3 Cal. App. 14, 20, 84 Pac. 220; Cruthers *v.* Donahue, 85 Conn. 629, 84 Atl. 322), it still would have tended to obscure the question, and it stands now as a circumstance of record against improper motive on the part of the engineer. The engineer simply made a decision as to the quality or class of "aggregate" to be used in performance of the contract, as to which the agreed submission was valid; and he was acting within the scope of his authority in deciding such question.

There is no allegation of fraud or collusion, and whatever may be the strict legal meaning of the contract on the point at issue, that is, whether the engineer construed the contract as a court on original consideration should have done, his decision does not in any view appear upon its face to be so grossly erroneous as to imply bad faith or a failure to exercise an honest judgment. Accordingly, his decision should be an end of the matter.

The conclusion which we have reached in this case follows, we

think, from previous decisions by the courts of this State, but since the question may not have been clearly settled thereby and is regarded as one of importance, we have deemed it proper to examine decisions of other courts. While there may be some conflict in outside decisions, the views expressed herein are supported, we think, by the weight of authority,—with, so far as we are aware, no Georgia decision to the contrary.

The Court of Appeals erred in holding that the "decision" of the State highway engineer was not final and conclusive, and in reversing the judgment of the trial court dismissing the petition.

*Judgment reversed. All the Justices concur.*