ASA G. CANDLER INC. *v.* GEORGIA THEATER CO. *et al.*

1. A lessor may by express provision limit the general rights of a lessee as regards the use of demised· premises.
2. Equity will enforce restrictive covenants of a lease, though irreparable damage will not result from a breach of the covenants.
3. A covenant in a lease of a theater building, which requires the lessee to operate the house at all times "as a first-class theater catering to the best class of people," limits the general rights of the lessee as regards the use of the demised premises, and is in effect an implied negative covenant against the use of the building for any purpose other than that named.
4. Generally words in a contract are to be given their usual and primary meaning at the time of the execution of the contract, but words of art, or words connected with a peculiar trade, are to be given the significa-tion attached to them by experts in such art or trade. This rule is one of construction, and, like every such- rule, is subordinate to the intention of the parties to the contract.
   (a) A moving-picture show, although "first class" and "catering to the best class of people," is not within the primary meaning of the cove-nant in the lease above indicated, executed in 1908 and renewed in 1915, requiring the lessee to operate the house "as a first-class theater."
   (b) The words, "as a first-class theater," as employed in the covenant of the lease above indicated, are descriptive of the character of the per-formance within the building, rather than of the building itself.
5. The construction placed upon a covenant in a lease by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them. Accordingly, where the owner of a building demised the same for a period of five years with the privilege of renewal for a like period, under a lease which required the lessee to operate the building at all times during the term of the lease or any renewal thereof "as a first-class theater catering to the best class of people," and where the lessee during the period of the original lease at all times exhibited moving pictures in connection with spoken drama in the demised premises, and for certain periods exhibited moving pic-tures exclusively, to the knowledge of the lessor, who without objection continued to accept the monthly rentals for the use of the building, and where thereafter the lease was renewed "upon the terms and conditions set out in said original agreement," and the lessee continued to exhibit moving pictures in connection with spoken drama, and during certain

periods exhibited moving pictures exclusively in the building, and expended a large sum of money in order to enable it to do 'so, the judge of the superior court did not err in refusing to grant an interlocutory injunction, on the prayer of the lessor, restraining the lessee from exhibiting moving pictures exclusively within the theater; it being conceded that the pictures exhibited were first-class and catered to and attracted the best class of people.

No. 692. June 14, 1918.

Petition for injunction. Before Judge Bell. Fulton superior court. October 20, 1917.

*Candler, Thomson & Hirsch,* for plaintiff.

*Dodd & Dodd,* for defendants.

George, J. On October 22, 1908, E. P. Ansley entered into an agreement with Ben Kahn by which Ánsley agreed to erect a theater with certain equipment and furnishings at a designated location in the City of Atlanta, the theater to be constructed in accordance with plans made by a named architect, subject to such alterations as Kahn might desire. The agreement provided that Kahn was to lease the theater when completed at the annual rental of $7500 for the term of five years, "with the privilege of renewal for another period of five years at an increased rental of $1000 per year." The agreement contained the following clause, around which the controversy in this case revolves: "The said Kahn also agrees that the house will be operated at all times during the term of this lease or any renewal thereof as a first-class theater catering to the best class of people." The theater was built with stage and dressing-rooms necessary to a regular theatrical performance. It was equipped according to the contract. About one third of the theater building is taken up with the stage and dressing-rooms, wholly unnecessary to a moving-picture show. From the completion of the theater in 1910, and during the term of the original lease, the lessee operated therein "high-class vaudeville," at all times in connection therewith moving pictures, and for certain periods moving pictures exclusively, and at considerable expense. On February 26, 1915, and agreeably to the contract, the lease was renewed for an additional term of five years beginning March 1, 1915, and ending February 26, 1920, "upon the terms and conditions set out in said original agreement," etc. By mesne conveyances the title to the building passed into the plaintiff, and the lease thereof, by successive transfers, to the defendant. In the spring of 1917 the lessee ceased conducting vaudeville perform-

ances, and announced the intention to exhibit thenceforth moving pictures in said theater; whereupon the plaintiff brought this suit in equity to enjoin the exhibition of moving pictures in said theater building, basing its contention on the ground that such conduct on the part of the lessee would be a breach of the provisions of the lease requiring the house to be operated "as a first-class theater catering to the best class of people." The contention is that a first-class moving-picture show, although it caters to the best class of people, is not a "first-class theater" within the meaning of the provision of the contract. Upon the hearing for interlocutory injunction it was conceded and is here conceded that the lessee had and was exhibiting first-class moving pictures, showing first-class productions by the leading "artists of the screen," and that the theater so conducted catered to and in fact attracted the best class of people. The injunction was refused, and the plaintiff excepted.

1-3. In the absence of restrictive covenants, it is generally said that the tenant has no right to use the demised premises for a purpose not contemplated by the parties, and materially different from that for which the premises were apparently intended. 16 R. C. L. 736, § 228. The lessor may always, by express provision, limit the general rights of the lessee as regards the use of the demises premises. Equity will enforce restrictive covenants of a lease, though irreparable damage will not result from a breach of the covenants. Joyce on Injunctions, §§ 584, 489; Jones on Landlord and Tenant, §§ 383, 384. The covenant in the lease under consideration is not in form a restrictive covenant, but imposes an affirmative duty upon the lessee. The duty to operate the house at all times "as a first-class theater catering to the best class of people" limits the general rights of the lessee as regards the use of the demised premises, and is in effect an implied negative covenant against the use of the building for any purpose other than that named. 2 High on Injunctions (4th ed.), § 1151a.

4. The lease under consideration was executed in 1908. At that date moving pictures were in a very crude state of development. The contract by its terms was to continue over a period of five years, with the privilege of renewal for a like period of years. It was renewed in 1915. At the latter date moving pictures had reached a very high state of development; but words in a contract

are ordinarily to be given their primary meaning at the time of the execution of the contract; and words of art, or words connected with a peculiar trade, are to be given the significance attached to them by experts in such art or trade. However, this rule is one of construction, and, like every such rule, is subordinate to the intention of the parties. The primary meaning of the word "theater" in 1908 did not include a moving-picture show, even if such exhibitions were within the secondary meaning of the word. The word "theater" from the Greek, means literally, "a place for seeing." As defined by all the standard authorities, a theater is a building especially adapted to dramatic, operatic, or spectacular representations; a playhouse. This court in Lee v. State, 56 Ga. 477, considered a theater as a building. The adjective "theatrical," as used by all the standard authorities, means, of or pertaining to the theater, especially in the matter of dramatic or spectacular representations; befitting the stage; dramatic. In a decision rendered by the Supreme Court of Alabama long before moving pictures were known (Jacko v. State, 22 Ala. 73), it was held that the word "drama" is "broad enough to cover any representation in which a story is told, a moral conveyed, or the passions portrayed, whether by words and actions combined, or by mere actions alone." In Ex parte Lingenfelter, 64 Tex. Cr. 30 (142 S. W. 570, Ann. Cas. 1914C, 765), the Court of Criminal Appeals of Texas said: "A theater is but a reproduction of some play, or scene, by acting, by pantomimes, or by tableau; a moving-picture exhibition is also but a reproduction of these same scenes and plays." This language was not precisely in point upon the question before the Texas court, and under our rule would be regarded as obiter. In 1911, in a case dealing with the right to make a moving picture of a copyrighted book, the Supreme Court of the United States held that a moving picture was a dramatic production. Kalem v. Harper, 222 U. S. 55 (32 Sup. Ct. 20, 56 L. ed. 92, Ann. Cas. 1913A, 1285). The word "theater," as employed in the clause of the contract in the instant case, is descriptive of the character of the performance within the building, rather than of the building itself. The precise question presented by this record is whether the word "theater," when so used, is broad enough to permit the exhibition by the lessee of moving pictures exclusively. It can not be left out of view that the primary purpose

of the lessor, evidenced by the contract, was to protect the property to the end that its value might be increased rather than decreased. The lessor therefore covenanted that the building must be operated as a theater and "as a first-class theater catering to the best class of people." He desired for his theater a reputation and a name. Taking into consideration the primary meaning of the words in the covenant at the date of the contract, we are of the opinion that the covenant requiring the lessee to operate the building "as a first-class theater" limited the rights of the lessee to use the building for the exhibition of theatrical performances as those terms were understood, and excluded the right of the lessee to use the building for a moving-picture show. Two moving-picture shows were in operation in the City of Atlanta in 1908; but these shows were staged in ordinary storehouses, while the lessor constructed a building with a large stage and ample dressing-rooms. The stage and anterooms cover about one third of the floor space of the theater building, and are wholly unnecessary in a moving-picture show. The word "theater" in 1915, the date of the renewal of the lease, perhaps included a moving-picture show; but neither in 1908 nor in 1915 was a moving-picture show included within the meaning of a "first-class theater," as employed by the parties to the lease contract.

5. The construction placed upon a covenant in a lease, as in case of all contracts, by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them. 5 Elliott on Contracts, § 4556. Many decisions might be cited to the effect that where a particular use has been made of the demised premises to the knowledge of the lessor, who without objection continues to accept the rents and profits from the lessee, the former will be estopped to deny the latter's right to so use the premises under the terms of the lease. Herscher *v.* Brazier, 38 Ill. App. 655; Oglesby *v.* Hughes, 96 Va. 115 (30 S. E. 439); District of Columbia *v.* Gallaher, 124 U. S. 505 (8 Sup. Ct. 585, 31 L. ed. 526). The lessee, both during the original period of the lease and after its renewal, exhibited moving pictures at all times in connection with spoken drama, and during certain periods moving pictures exclusively, in the demised premises. In order to do so, the record shows that the lessee expended a large sum of money. The lessor, with knowledge of these facts and

without objection, continued to accept the monthly rentals for the use of the theater building. In these circumstances we are unwilling to hold that the judge of the superior court erred in refusing to enjoin the lessee as prayed. On the contrary, we rule that the interpretation placed upon the contract by the parties, as shown by their acts and conduct, authorized the judge to deny to the lessor the harsh remedy that is now sought to be invoked against the lessee. *Florida Central R. Co.* v. *Cherokee Sawmill Co.,* 137 *Ga.* 815 (2), 821 (74 S. E. 523). We more readily reach this conclusion because the denial of the injunction by the judge in this case has the effect to preserve the existing status of the parties until the jury can determine the question of estoppel involved.

The evidence of theatrical managers, playwrights, and dramatic critics, to the effect that moving pictures presenting the leading artists of the country in plays of dramatic excellence are first-class theatrical or dramatic performances, was admitted and considered by the court. This evidence was objected to upon the ground that it was not confined to the status of the moving picture at the date of the execution of the original lease, and upon the further ground that the same was mere opinion evidence. We are of the opinion that this evidence should have been excluded, but upon the ground that the contract is free of ambiguity and that the words contained in the covenant do not require the aid of extrinsic evidence to give effect to the plain and expressed intention of the parties. Consideration of this evidence will not, however, require a reversal, inasmuch as the injunction was denied generally; and as we have seen, the judge did not err in refusing to grant the injunction upon the ground of estoppel.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*

ATKINSON, J., concurs specially as to the ruling announced in the fifth division. The use of the building for moving-picture shows, and acceptance of rents with knowledge of such use and without objection, tends to show mutual assent to departure from the strict letter of the contract, within the meaning of the Civil Code, § 4227; and before the lessor could sue to enjoin such use, it would be necessary to give reasonable notice of his intention to return to the exact terms of the contract. But such departure

would not under all circumstances work an estoppel against insistence upon the terms of the contract.