11126.   DOOLEY, administrator, *v.* WILBANKS.

All agreements to pay in specifics being presumed to be made in favor of the debtor, he has the option of paying either in specifics or in money amounting to the value of the specifics; and ordinarily this value will be their market value at the time of the maturity of the obligation.  However, where it appears from the agreement that it was the intent of the parties thereto that the debt should be paid in specifics on the basis of a certain fixed money value thereof, *irrespective of their market value on the date of the maturity of the obligation.* then the debtor has the right to pay, in lieu of the specific articles called for, their money value on the basis fixed in the agreement.

DECIDED MARCH 4, 1920.

Complaint; from Habersham superior court — Judge J. B. Jones. October 4, 1919.

Application for certiorari was denied by the Supreme Court.

*Homer Sutton, John J. & Roy M. Strickland, P. Cooley,* for plaintiffs.

*J. J. & Sam Kimzey,* for defendants.

BROYLES, C. J.  J. H. Wilbanks, the defendant in this case, on September 24, 1912, entered into an option contract with G. W. and J. C. Dooley to buy from the latter a certain farm containing

332 acres of land, wherein the vendors agreed to sell the land at
$17 per acre if all cash was paid at the time of the purchase, or for
one hundred and eighty 500-pound bales of good white merchant-
able cotton to be paid as follows: 15 bales in the year of the
contract and 15 bales per year thereafter for eleven years. The
contract provided that "in case party of the second part don't raise
the cotton on the farm, then party of the second part shall have the
privilege to pay cash on the basis of 10 cent per pound cotton for
the amount of the 15 bales." It was further provided in the con-
tract that if Wilbanks bought the land for cotton, he should pay
$500 cash ($50 of which had been paid to secure the option), and
that "$500 is to be equal to 10 bales of cotton, and is to be con-
sidered as 10 bales of cotton." It was also agreed that Wilbanks
had the right and privilege to pay as much cotton in any year as he
desired, until all of the debt was paid, and that he was to give one
note for 5 bales of cotton to be delivered the first year, and 11
notes for 15 bales each. In pursuance of this contract Wilbanks,
on November 25, 1912, gave a series of notes for the purchase-
money of the land, and in each of them he promised to pay to the
plaintiffs a specified number of 500-pound bales of cotton "based
on 10 cents per pound, *regardless of the market price on date of
delivery*" (italics ours). Each note recited that it was "given for
the purchase-money of certain land in accordance with the contract
between G. W. Dooley and J. C. Dooley and J. H. Wilbanks, dated
September 24, 1912", and that it was "secured by a mortgage dated
this day, given by said Wilbanks." And the record shows that
Wilbanks, on November 25, 1912, executed a security deed (referred
to in the notes as a mortgage) to G. W. Dooley and C. W. & W. A.
Savage, covering 308 acres of the land in question (it appearing
that when the land was surveyed it was found that the tract con-
sisted of 308 acres instead of 332 acres). The security deed con-
tained the following provisions: "This conveyance is made for the
following purpose and none other: Said J. H. Wilbanks is in-
debted to the said G. W. Dooley and C. W. & W. A. Savage in
the sum of 167 bales and 130 pounds of good white merchantable
cotton, *based on 10 cents per pound, regardless of market price or
prices on date of delivery* (italics ours), each of said above 167 bales
of cotton to weigh 500 pounds each, with interest at the rate of 8%
per annum after maturity, based on said cotton at 10 cents per

pound. This mortgage-note is given for the purchase-money in accordance with the contract between G. W. Dooley and J. C. Dooley and J. H. Wilbanks, dated September 24, 1912, and by agreement of all parties C. W. & W. A. Savage have taken the place of J. C. Dooley in said contract. . . The consideration of this mortgage, to wit, 167 bales and 130 pounds of good white merchantable cotton, based on 10 cents per pound, is hereby credited with 14 bales weighing 500 pounds each and 130 pounds of good white merchantable cotton, based on 10 cents per pound, the receipt whereof is hereby acknowledged."

The plaintiff brought suit on three of the notes signed by Wilbanks, and alleged that the latter had failed and refused to deliver the cotton on the dates for delivery specified in the notes, and that cotton on said dates was worth approximately 30 cents per pound, and he asked for damages for a breach of the contract, on the basis of that value.

Upon the trial the undisputed evidence showed that the defendant, at the maturity of the notes, tendered to the plaintiff, in cash, the value of the cotton, based upon 10 cents per pound, and that the tender was declined by the plaintiff, who demanded a settlement on the basis of the then market value of the cotton,—which was approximately 30 cents per pound. After the evidence was all in, each party requested the court to direct a verdict in accordance with his contentions, and the court, agreeing with the contentions of the defendant, directed a verdict for the plaintiff for $1,100 only (the exact amount which had been tendered by the defendant in settlement of the three notes sued on), with interest thereon from the date of the maturity of the obligations; and the costs of the suit were taxed against the plaintiff.

We think that the judge properly construed the option contract, and the notes and security deed given in pursuance thereof, as constituting one single contract, and that he correctly held that this contract and the undisputed evidence adduced upon the trial showed that it was the intent of the parties that the value of all cotton to be delivered by the defendant should be fixed at 10 cents per pound, regardless of its market value at the date of the maturity of the obligations. Under all the facts of the case it appears that this is the just and fair construction of the contract. See, in this connection, *Sims* v. *Cox*, 40 *Ga.* 77. It is true that in that case the purchaser of the land expressly guaranteed that the cotton would

be worth 16½ cents per pound to the vendor when delivered, and in the instant case there is no guarantee, in so many words, that the cotton would be worth 10 cents per pound to the vendor of the land when delivered to him. We think, however, that under all the facts of the case there was virtually and in effect such a guarantee, and that it was manifestly the intention of the parties, as shown by the language in the option contract and in the notes and the security deed, that *all* the cotton received by the vendor of the land should be of the value of 10 cents per pound, irrespective of its then actual market price. As throwing light upon the intent of the parties and how they regarded the contract, the undisputed evidence upon the trial showed that in some years when cotton was worth less than 10 cents per pound, the defendant delivered cotton to the vendor and paid him, in addition thereto, sufficient money to bring the value of the cotton up to 10 cents per pound. It is not clear, however, from the record, whether or not these money payments were made because of a failure by the defendant in those years to grow upon the land the stipulated number of bales of cotton (15) which were to be delivered each year, but there is a fair inference from the evidence that the money payments were not made for that reason, but to carry out the virtual agreement of the parties that *all* cotton delivered should be of the value of 10 cents per pound.

All agreements to pay in specifics are presumed to be made in favor of the debtor, who may pay in specifics, or in lieu thereof he may pay the amount of the debt in money, amounting to the value of the specifics at the date of the maturity of the obligation, at the place where it was payable, if a specific place was mentioned in the note, and if no specific place was mentioned, then at the place where the note was executed, with lawful interest thereon. Civil Code (1910), §§ 4270, 4271. Where it appears, however, from the agreement, that it was the intent of the parties thereto that the debt should be paid in specifics on the basis of a certain fixed money value thereof, irrespective of their market value at the date of the maturity of the obligation, then the debtor can at his option pay the money value of the specific articles called for on the basis fixed in the agreement. *Sims* v. *Cox,* supra.

The construction placed upon the covenants of a contract by the parties thereto, as shown by their acts and conduct, is entitled

to much weight, and may be conclusive upon them. *Candler* v. *Georgia Theatre Co.,* 148 *Ga.* 188 (5) (96 S. E. 226, L. R. A. 1918, F, 389).

It is unnecessary to decide whether or not the court erred in allowing interest on the principal sum, as this part of the directed verdict is not excepted to by either party.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*