27221. MacDOUGALD CONSTRUCTION COMPANY *v.*
STATE HIGHWAY DEPARTMENT OF GEORGIA.

DECIDED MARCH 17, 1939.

710

*Hirsch & Smith, MacDougald, Troutman & Arkwright, Harllee Branch Jr.,* for plaintiff.

*W. Glenn Thomas, Beck, Goodrich & Beck,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) ■ The sole questions presented for decision, as appear from briefs and argument of counsel, are whether the contract between the plaintiff and the defendant for the construction of the road authorized the plaintiff to use stone aggregate, or compelled the plaintiff to use slag aggregate; whether the plaintiff, in complying with the demand of the engineer of the highway department to use slag aggregate, waived its right, if it had such right under the contract, to use stone aggregate; and whether the act of the engineer in demanding the use of slag aggregate amounted to a decision on a question connected with the execution of the contract which would be final and conclusive.

There was read into the contract between the parties the contents of the notice to contractors, the proposal by the plaintiff, the plans and standard specifications on file in the office of the State highway engineer, and the blue-print. In none of these was the plaintiff required to use in the construction of the road any kind of aggregate, whether stone, slag, or otherwise, unless the plaintiff

was required, by the provisions of section 45 of the standard specifications on file with the highway department, to use slag aggregate. Otherwise than in section 45 of the standard specifications the contract called only for the furnishing of "aggregate" by the plaintiff, without any designation of any particular kind of aggregate. While the standard specifications on file in the State Highway Department constitute part of the contract between the parties, the provisions of these standard specifications must yield to, and are superseded by, any specific provisions contained in the specific plans and specific provisions for the particular work which the plaintiff had undertaken and contracted to perform. It appears that the standard specifications relate to the use of both kinds of aggregate—stone and slag. Paragraph 100.24 of the standard specifications has reference to stone aggregate, and paragraph 45.01 of section 45 has reference to slag aggregate. Therefore, the incorporation into the contract of the standard specifications of the highway department does not determine the question as to the nature and kind of aggregate, whether stone or slag, which the plaintiff was under obligation to furnish. On the blue-print prepared by the State Highway Department and furnished to the plaintiff there appear stipulations which form a part of the contract between the plaintiff and the defendant, and which indicate the method of construction of the work and the sizes of the aggregates to be used in the construction. It appears on the blue-print that the methods of construction of the work which the plaintiff had contracted to do were as described in section 45 of the standard specifications, with the exception that "a double application of bituminous material will be used," and that "the amounts of aggregate will be as shown below: . . apply aggregate, size 534 paragraph 100.23, rate of 50 lbs. per sq. yd.; apply aggregate, size 4A, paragraph 100.23, rate of 20 lbs. per sq. yd." These specifications on the blue-print contain no indication as to whether the aggregate to be used in the construction of the work is stone aggregate or slag aggregate or any other kind of aggregate. As to the aggregate, reference is made on the blue-print to paragraph 100.23 of the standard specifications. This paragraph, as will appear upon an inspection of the standard specifications as contained in the statement of facts herein, has reference only to the size of aggregate, and has no reference whatsoever to the kind of aggregate. This is conceded by counsel for both parties.

As stipulated on the blue-print the methods of construction for the job are the methods of construction as described in section 45 of the standard specifications with the exception that on this job there shall be "a double application of bituminous material." By a reference to section 45 of the standard specifications, to which the blue-print refers for the ascertainment only· of methods for the construction of the work on the particular job, and not for the materials, it will be observed that section 45 of the standard specifications contains specifications indicating the methods to be used on a job which "shall consist of a wearing surface composed of a single application of bituminous materials and layers of slag" etc., and specifications of the methods for constructing such job. Stipulations on the blue-print do not refer to section 45 of the standard specifications for the ascertainment of the materials to be used on the particular job. The materials to be used on the particular job by the plaintiff are specifically indicated on the blue-print. By a comparison with these stipulations for materials on the blue-print and the stipulations for material in section 45 of the standard specifications it will be found that the materials specified on the blue-print are different from the materials specified in section 45 of the standard specifications. Among the materials specified on the blue-print, there is, "aggregate size 534" and "aggregate size 4A" as indicated in paragraph 100.23 of the standard specifications, whereas among the materials specified in section 45 of the standard specifications for the work indicated in section 45, is "aggregate 100.25 size as specified." This means that paragraph 100.25 of the standard specifications is to be looked to for a further description of the kind of aggregate specified in section 45. Under the provisions of the plaintiff's contract the plaintiff was to construct what is known as a double-surface treatment road, whereas section 45 of the standard specifications applies to a road of another character. Section 45 is incorporated into the plaintiff's contract only in so far as it prescribes the methods of construction.

The methods for the construction of the road contracted for by the plaintiff in the plaintiff's contract, as contained in the stipulations on the blue-print, adopt by reference to the standard specifications the methods of construction for another class of road. Merely because the methods of construction for the road provided

for in the plaintiff's contract which are adopted by reference to the standard specifications are methods of construction for a road of a different character from that provided for in the plaintiff's contract and a road in which slag aggregate is used in its construction, it does not follow that by the adoption in the plaintiff's contract of these methods of construction, that the plaintiff's contract must be construed as one which calls for the furnishing of slag aggregate in the construction of the road. Whatever aggregate the plaintiff under his contract is required to use in the construction of the road, or whether he uses stone or slag aggregate, the methods of construction of a road built out of slag aggregate as provided in section 45 of the standard specifications are the methods of construction to be followed by the plaintiff in the performance of his contract, irrespective of the nature and kind of aggregate used. We therefore conclude that the contract does not require the plaintiff to use slag aggregate, but, in so far as it contains any express provision, it provides only that the plaintiff shall use "aggregate" in the construction of the road.

The term "aggregate," as alleged in the plaintiff's petition, when used in reference to the construction of roads, is a general term which designates the solid material out of which the road is made, and which is bound into a solid mass by cement, asphalt, tar, water, or other binding materials. It is alleged that aggregate which consists of stone is regarded as the premier road-building material of the world, and has been in use for road building for centuries, and is to-day in more general use than any other kind of aggregate, and that when "aggregate" is specified contractors generally consider it as stone aggregate and not the lesser used materials of gravel and slag. "The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." Code, § 20-704 (3); *Matthews* v. *American Textile Co.,* 23 *Ga. App.* 675, 676 (5) (99 S. E. 308). It is a fundamental principle in the construction of contracts that the meaning placed upon the terms of the contract by the contracting parties is to be adopted. This is particularly true of a contract relating to a particular trade or business. It is provided in the Code, § 20-704 (2), that "words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade

or business, will be construed, generally, to be used in reference to this peculiar meaning." *Asa G. Candler Inc.* v. *Georgia Theatre Co.,* 148 *Ga.* 188 (96 S. E. 226, L. R. A. 1918F, 389). Under the allegations of the plaintiff's petition the term "aggregate," as used in the plaintiff's contract, has reference to aggregate which is composed of stone. Where the terms of a contract will permit, it should be given a construction which will advance its beneficial purpose. *Illges* v. *Dexter,* 77 *Ga.* 36. "The surrounding circumstances are always proper subjects of proof to aid in the construction of contracts." Code, § 38-505. As corroborative of this construction of the contract, namely that it calls for stone aggregate, the objects and purposes of the contract which are to give employment to the unemployed in the State of Georgia by the appropriation of Federal funds to be used in the payment of the work contracted for, are proper matters for consideration. It would be an enhancement of the beneficial purpose of the contract for the contractor to use stone aggregate which is available in Georgia, and in the production of which Georgia labor would be required. Since slag aggregate is a product which can not be obtained within the State of Georgia, but must be supplied from other States, the nearest of which is Alabama, the requirement of slag aggregate in the construction provided for in the plaintiff's contract would not be an enhancement of the beneficial purpose of the contract which was to furnish employment to the unemployed in the State of Georgia.

The terms and specifications of the contract were prepared by the defendant, the State Highway Department. "If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." Code, § 20-704 (5). Since stone aggregate could have been supplied by the plaintiff at a less expense than it would cost to supply slag aggregate, that construction of the contract most strongly against the State Highway Department, the scrivener, is that it provides for stone aggregate rather than slag aggregate. The contract under the allegations of the petition should be construed as authorizing the use of stone aggregate.

■ The plaintiff, in acceding to the demand of the State highway engineer to supply slag aggregate, was not thereby estopped from asserting that the contract obligated the plaintiff to furnish stone aggregate which the plaintiff could have done at a less cost.

The plaintiff at the time notified the defendant that the construction of the contract, as insisted by the plaintiff, was that stone aggregate was required, but that the plaintiff would accede to the engineer's demand and furnish slag aggregate and would expect to be paid by the highway department for the extra cost of furnishing the slag aggregate. Where a contractor under a contract for a construction project is required by the opposite party to perform services and to furnish material in the construction of the contract which is not required or called for by the contract, the furnishing of such material or the performance of such work is regarded as an "extra," and the contractor furnishing the same is entitled to extra compensation. Where the contractor accedes to a demand of the other contracting party to perform work or furnish material which, under the contractor's construction of the contract, and which he makes known to the other party, constitutes an "extra," but which the opposite party insists is a compliance with the terms of the contract, the contractor is not estopped from insisting upon his construction of the contract and recovering for the work and material thus furnished if he establishes that they are furnished as extras and outside the terms of the contract. The plaintiff therefore is not estopped from recovering the extra cost of supplying slag aggregate in compliance with the demand of the defendant's engineer. Venable Construction Co. v. United States, 114 Fed. 763; United States v. Gibbons, 109 U. S. 200 (3 Sup. Ct. 117, 27 L. ed. 906); Beckwith v. New York, 148 App. Div. 658 (133 N. Y. S. 202); Borough Construction Co. v. New York, 200 N. Y. 149 (93 N. E. 480, 140 Am. St. R. 633); Molloy v. Lieve, 102 L. T. 616.

■ The provision in the contract that "a decision of the State highway engineer upon any question connected with the execution of this agreement or any failure or delay in the prosecution of the work by the said contractor shall be final and conclusive," does not confer upon the State highway engineer the power and authority to construe the contract by a determination as to what labor and material the plaintiff was under an obligation to furnish under the contract. His authority is only to determine the methods of execution of the terms of the contract and any question with reference to failure or delay in the prosecution of the work. The State highway engineer's decision that under the contract the

720

plaintiff was required to furnish slag aggregate is not an authoritative construction of the contract binding on the plaintiff. In Donnelly's "The Law of Public Contracts," 349, it is stated as follows: "The stipulation in public contracts that all questions and differences which may arise between the public body and the contractor under the contract shall be referred to the engineer, and his decision shall be final and conclusive, does not give the engineer jurisdiction to determine that work, which is not done under the contract or specifications, and which is not governed by them, was performed under and is controlled by the agreement, and his decision to that effect is not binding." The petition set out a cause of action, and the court erred in sustaining the demurrer.

*Judgment reversed. Sutton and Felton, JJ., concur.*