## 43962. McLENDON v. HARTFORD ACCIDENT & INDEMNITY COMPANY.

ARGUED OCTOBER 8, 1968—DECIDED MARCH 10, 1969—REHEARING DENIED APRIL 2, 1969—

*Allgood & Childs, Thomas F. Allgood,* for appellant.

*Jay M. Sawilowsky, Hull, Towill & Norman, A. Rowland Dye,* for appellee.

HALL, Judge. McLendon operated a peanut storage warehouse where he processed and stored peanuts for G. F. A. Peanut Association, hereinafter referred to as G. F. A. To be approved as a warehouseman it was necessary that McLendon secure a surety bond guaranteeing the faithful performance of the warehouse contract. Hartford executed the surety bond to McLendon indemnifying G. F. A. for loss resulting from the warehouse storage agreement between G. F. A. and McLendon. McLendon operated the peanut storage warehouse until the latter part of December 1963, at which time there was a disagreement between G. F. A. and McLendon. G. F. A. then took over the operation of the warehouse under the terms and conditions of the contract between it and McLendon. At a later date G. F. A. made a claim on the bond against Hartford contending the there were shortages in the amount of peanuts that it had stored with McLendon. Hartford, after paying G. F. A.'s claim, filed the present suit for reimbursement under the provisions of the bond.

The bond provided that McLendon would reimburse Hartford for any amounts of money that Hartford paid in consequence of having executed the bond. The bond further provided: "That in any accounting which may be had between the undersigned and the surety, the surety shall be entitled to credit for any and all disbursements in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether such liability, necessity or expediency existed or not . . . Eleventh: That the surety shall have the exclusive right for itself, and for the principal on or in said bond or other instrument, to decide and determine whether any claim, demand, liability, suit, action, judgment or adjudication, made, brought, or entered against the surety or principal on or in said bond or other instrument, or both, whether jointly or severally, or jointly and severally, shall, or shall not, be defended, tried, appealed, or settled, and its decision shall be final, conclusive and binding upon the undersigned."

McLendon contends that the trial judge erred in sustaining a motion to strike the fifth and sixth defenses of his answer

which set up the defense that Hartford failed to exercise good faith in acting under the terms and conditions of the bond. Hartford contends that the trial court did not err for the reason these defenses were not sufficient to meet the requirements for pleading "fraud" under *Code Ann.* § 81A-109(b). The fallacy of this contention is that allegations that one has failed to exercise "good faith" are totally and completely different from a claim that one has made a "fraudulent misrepresentation." Lack of "good faith" is not the same as "fraud" under *Code Ann.* § 81A-109(b).

The bond provisions set forth above made the surety (Hartford) the agent of the principal (McLendon) "to decide and determine whether any claim, demand, liability, suit, action, judgment or adjudication, made, brought, or entered against the surety or principal . . . shall, or shall not, be defended, tried, appealed, or settled, . . ." Being its agent it is elementary that Hartford held a fiduciary relationship with McLendon and was required to act in good faith and with loyalty. See *Fort Valley Coca-Cola &c. Co. v. Lumbermen's Mut. &c. Co.,* 69 Ga. App. 120 (7) (24 SE2d 846); *Williamson, Inman & Co. v. Thompson,* 53 Ga. App. 821 (187 SE 194). The situation is somewhat similar to that in which a contractor with the State Highway Department agrees that if differences arise the highway engineer shall make all decisions connected with the execution of the agreement and that his decision shall be binding and conclusive. However, a contractor can challenge this decision where he alleges there has been "fraud, or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment." *State Hwy. Dept. v. MacDougald Constr. Co.,* 189 Ga. 490 (2) (6 SE2d 570).

McLendon's fifth and sixth defenses charge in specific detail that Hartford did not act in good faith in paying off G. F. A. The trial court erred in striking these defenses and all further proceedings were thereby rendered nugatory.

Hartford further contends that if this court should conclude that the fifth and sixth defenses of the answer should not have been stricken, the error was harmless in view of the fact the transcript discloses that the defendant was permitted, without

objection, to submit some evidence on the matter and that the entire transcript demands a conclusion that it acted in good faith in making the payment to G. F. A. We reject this contention for the simple reason that it rests upon sheer conjecture and speculation. The trial court had stricken this defense. How then can it be said as a matter of law that since McLendon was able to present *some* evidence at the trial in support of his stricken defenses, a finding is demanded that this was all the evidence he could or would have submitted if the defense had not been stricken?

The trial court erred in granting Hartford's motion for a judgment notwithstanding the verdict.

*Judgment reversed. Felton, C. J., Bell, P. J., Jordan, P. J., Pannell and Deen, JJ., concur. Eberhardt, Quillian, and Whitman, JJ., dissent.*

EBERHARDT, Judge, dissenting. I agree with Judge Hall that the surety on the bond owed to its principal the duty of exercising good faith in settling or paying the claim made by the obligees. The situation is similar to that in which a contractor with the State Highway Department agrees that if differences arise the highway engineer shall make all decisions connected with the execution of the agreement and that his decision shall be final and conclusive. His determination is final and conclusive in the absence of fraud or the exercise of bad faith; he must exercise an honest judgment. *State Hwy. Dept. v. MacDougald Constr. Co.*, 189 Ga. 490 (2) (6 SE2d 570).

I do not think that failure to exercise good faith, or failure to make an honest judgment, falls in the same category as the making of false representations when inducing another to act, as in *Daugert v. Holland Furnace Co.*, 107 Ga. App. 566, 569 (130 SE2d 763). The representations may be simply reckless, made in ignorance of the truth. Failure to make an honest judgment imports more. Consequently, as I view it, it is only necessary that one plead facts which, if proven, are sufficient to authorize a finding of bad faith or the lack of honesty in making judgment. The defense of bad faith here may meet that test, but the striking of it was harmless since the defendant was permitted, without objection, to submit evidence on the matter—apparently all that he had, for *he does not contend that*

*there was more that he could or would have submitted* if the defense had not been stricken. In this situation we consider the pleadings as having been amended to put the issue back in (*Code Ann.* § 81A-115(b)) and that defendant submitted all proof of his defenses that he had available. He fails to show error.

A careful and sifting examination of the record discloses that as to the charge of bad faith the verdict is unsupported. The contract and the bond obligate the principal and surety to pay for the difference in the guaranteed value of the peanuts when they came into the warehouse and when they went out. This was arrived at by taking the weight and grade and applying the unit price—the price being the same in each instance. McLendon does not complain of the weights or grades as the peanuts went into his warehouse. *He does not attack the grades of the peanuts* as they went in or out. These were made in each instance by government graders who took samples. Indeed, there was little loss of grade in any save the large Virginia peanuts, which had somehow been "beaten up," but this amounted in dollars and cents to only $108.16.

Either he or his wife, who he admits was authorized to act for him, weighed the peanuts in and out, or was present when it was done and *signed the weight certificates* which were submitted to G. F. A. and on which he collected his warehouse charges.

There is testimony both from McLendon and from his wife indicating a loss of peanuts resulting from improper handling when they were loaded out. This may account for some or all of the difference in the guaranteed values coming in and going out, but even so, it is no more than negligence in handling—not bad faith.

It is uncontradicted that a representative of Hartford went to the offices of G. F. A. soon after the claim was made, inspected and checked the records of McLendon's operation, on which the claim was based, and found that they were in order and under the terms of McLendon's contract with G. F. A. and of his bond for faithful performance, substantiated a valid claim for $2,077.04. (This is actually 120 percent of the loss in value,

as called for in the contract. The actual loss was $1,730.87, and this is what the bonding company paid and what it seeks to recover).

An adjuster of the company called McLendon about the matter and McLendon denied owing the claim, asserting that he had records which would show that the claim was not meritorious and that he would dig them up and make them available to the adjuster, whereupon the adjuster asked McLendon to get back in touch with him as soon as he could get up the records. There is some conflict as to whether he ever tried to get in touch with the adjuster and as to what efforts the adjuster made to get back in touch with McLendon—but they did not get together. McLendon never submitted to the company any records which discredit the claim. He produced none at the trial of the case. If he had such records it was his duty to produce and submit them to his surety when it was investigating the claim. When he failed to do so, it could conclude that he did not have them. *Code* § 38-119.

What he did produce was an invoice from him to G. F. A. for warehouse charges which he contends to have been an accord and satisfaction of the claim. But that cannot be. G. F. A. had not audited its records relative to McLendon's warehousing for determining whether a claim for shortage in value existed when the invoice was submitted, nor does the invoice purport to be an accord and satisfaction.

The evidence demands the conclusion that Hartford reached an honest judgment, that the claim was just and owing and that it did exercise good faith in making payment of it.

Under terms of the contract, application for bond and the bond the surety is entitled to reimbursement, and the grant of the judgment n.o.v. was proper.

I am authorized to state that Judges Quillian and Whitman join in this dissent.