**OPELIKA MANUFACTURING CORP.,**
**Plaintiff-Appellee,**

v.

**CITY OF HAWKINSVILLE, GEORGIA, Defendant-Appellant.**

No. 75–3158
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1976.

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

**942**

Denmark Groover, Jr., Macon, Ga., Walter E. Baker, Hawkinsville, Ga., for defendant-appellant.

Carr G. Dodson, Macon, Ga., A. Felton Jenkins, Jr., Atlanta, Ga., Stanton Schuman, Chicago, Ill., for plaintiff-appellee.

Before THORNBERRY, MORGAN and RONEY, Circuit Judges.

**PER CURIAM:**

Appellant City of Hawkinsville appeals the grant of summary judgment for plaintiff Opelika Manufacturing Corporation by the United States District Court for the Middle District of Georgia. Asserting "diversity" jurisdiction under 28 U.S.C. 1332(a)(1), Opelika brought a declaratory action seeking a determination of the amount of its obligation under a contract it had entered in with the City.

Relevant facts are as follows: the City and Opelika agreed to build a new sewage treatment facility and share the cost of the facility on a ratio equal to their respective use of the system—a ratio later determined to be 65% for Opelika and 35% for the City. In anticipation of building the system, the City applied for and on June 13, 1972 received a grant of $186,000 from the Environmental Protection Agency ("EPA"), after which the City informed that agency that it would request an increase in the grant. Shortly thereafter, the City accepted EPA's increase in the grant from $186,000 to $465,000, but again requested a further increase. Toward that goal, it wrote United States Senator Herman Talmadge to seek his aid in securing further funds[1] and also wrote Opelika, acknowledging that it was the City's desire that Opelika be "the recipient of every benefit available." Finally, on February 22, 1974, the parties signed a contract[2]

---

1. The City wrote to Senator Talmadge:

    A grant of $465,000 was made . . . in a previous Federal Fiscal year . . . .. This $465,000 was accepted . . . with the understanding . . . that supplemental grants were requested since the project was going to far exceed the original project. We . . . are now faced with a project cost which place the City and Opelika in a most difficult position.

    Opelika, who originally anticipated expenditures of 20% of $620,000 is now . . placed in the position of being asked to fund 65% of the projected cost of an estimated $1.365 million.

    This gigantic cost increase without supplemental grants jeopardize not only the City's financial structure but also gives Opelika pause as to whether their operation in Hawkinsville can bear such an expenditure.

2. The contract provides in part:

    The funds from this grant shall be used in the construction and applied on the total cost of the project and the Company [Opelika] *shall have the benefit of such grant insofar as the total cost is concerned* and the cost sharing referred to in this contract. The City has resolved that *the Company should receive whatever advantage this Federal grant may offer in the total construction costs of the project.* It is, therefore, estimated at the time of the signing of these presents that the Company's share of the cost shall be $805,071.96 and the City's share shall be $433,500.29. *The grant from the Environmental Protection Agency shall reduce whatever sums may be required from both the City and the Company in the total cost of the project.* [Emphasis added.]

that provided, among other things, for payments of 65% by Opelika and 35% by the City of the total cost of the project, estimated to be $1,703,572, with the grant from the EPA to "reduce whatever sum may be required from both the City and the Company in the total cost of the project."

Thereafter the City received another increase in their EPA grant from $465,000 to $1,345,607, but informed Opelika that, pursuant to the contract, it should not have the benefit of any part of this last increase but should pay 65% of the total cost of the project ($1,703,572) less the amount of the EPA grant at the time of the contract ($465,000) for a total payment by Opelika of $805,071.

■ We find the City's interpretation of the contract to be incorrect. Under its interpretation it would receive a total contribution of $2,150,678 from the EPA and Opelika. Yet with the total cost of the project at only $1,703,572, this would mean that the City would obtain its new sewage treatment facility free of any cost and, in addition, would reap a windfall of $447,106. The contract is unambiguous in its statement that the grant from the EPA would reduce whatever sums may be required from both the City and Opelika. It is well settled by Georgia courts that when the language of a contract is definite and unambiguous, it is the duty of the courts to give it full effect. *Wolverine Insurance Co. v. Jack Jordan, Inc.,* 213 Ga. 299, 99 S.E.2d 95 (1975). Accordingly, we affirm the decision of the district court that there is no genuine issue as to any material fact and the holding on summary judgment that the parties agreed that the total EPA grant would be used to reduce the total cost of the project and the remaining reduced amount would be shared 65% by the company and 35% by the City. In money at the time of the summary judgment this would mean a sharing of the remaining $357,965.25 after deducting the EPA total grant of $1,345,607.00 from the estimated total cost of $1,703,572.25, 65% to be paid by the company and 35% by the City.

Affirmed.