RELIANCE INSURANCE
COMPANY, Plaintiff,

v.

Ted O. ROMINE, Defendant.

Civ. A. No. 488–124.

United States District Court,
S.D. Georgia,
Savannah Division.

Feb. 22, 1989.

Charles H. Fails, Atlanta, Ga., for plaintiff.

James P. Gerard, Savannah, Ga., for defendant.

ORDER

ALAIMO, Chief Judge.

This is an action for recovery of damages under an indemnification agreement. Before the Court are cross-motions for summary judgment. As the agreement at issue is valid and binding upon the parties, defendant's motion will be denied but plaintiff's motion will be granted.

BACKGROUND

In the fall of 1983, Norris, Inc. ("Norris"), a non-party to this action, agreed to enter into a construction contract with CertainTeed, another non-party, for the construction of the Filled Coatings Systems project ("the Project") for CertainTeed in Savannah, Georgia. CertainTeed informed Norris that, as a condition precedent to being awarded the contract, Norris would be required to obtain labor and material payment and performance bonds ("the bonds").

Subsequently, Aubrey Norris, president of Norris, approached the insurance agency of Dixon Sheehan Titus, Inc. ("Dixon Sheehan"), an authorized bonding agent for plaintiff. As part of its application for plaintiff's bonds from Dixon Sheehan, Norris submitted a financial statement. Based upon a review of the financial statement, Dixon Sheehan informed Norris that, because of Norris' financial condition, plaintiff would not issue bonds to Norris on the Project. However, Norris was informed that plaintiff would be willing to issue bonds for the Project if Norris obtained an additional indemnitor. Thereafter, Aubrey Norris informed Dixon Sheehan that Ted Romine, the defendant in this matter, would sign an indemnification agreement as an additional indemnitor so that plaintiff would issue its bonds to Norris for the Project.

On November 7, 1983, Norris entered into a construction contract with Certain-

Teed for the construction of the Project. As required by CertainTeed, Norris also continued to seek the required labor and material payment and performance bonds it needed to construct the Project. Subsequently, on November 16, 1983, Norris executed a "Contractors Bond Application and Indemnification Agreement" with plaintiff. In addition, both Aubrey Norris and Ted Romine individually signed the indemnification agreement given to plaintiff. Following receipt of the executed indemnification agreement, Dixon Sheehan issued plaintiff's labor and material payment and performance bonds for the Project to Norris.

Thereafter, during the winter of 1983 and spring of 1984, Norris undertook construction of the Project for CertainTeed. However, in the spring of 1984, CertainTeed declared Norris in default of its contract obligations and terminated Norris on the Project.

At the time that Norris was declared in default by CertainTeed, Norris was unable to pay six subcontractors and suppliers who had furnished Norris with labor, materials and equipment for its use at the Project. All six claimants subsequently submitted claims to plaintiff for work done on the Project. Plaintiff requested each claimant to provide it with documentation of all materials, equipment and labor furnished to Norris for use on the Project, and further requested that each claimant execute a claimant's affidavit stating that the furnished items were used for or on the Project.

Thereafter, based upon the claims affidavits submitted by each claimant, accompanied by supporting documentation and in accordance with its standard investigation practices for claims of this size and nature, plaintiff paid each of the claims. The total amount of claims paid by plaintiff on the Project was $28,211.80. Following payment, plaintiff made demands upon Romine for reimbursement based on the indemnity agreement which defendant had executed. Upon defendant's refusal to pay, plaintiff filed this action to recover the above sum.

DISCUSSION

I. *Validity of the Indemnification Agreement*

■ Defendant attempts to avoid liability to plaintiff by contending that, although he executed the indemnification agreement at issue, it is not valid and enforceable due to a failure of consideration. Specifically, defendant contends plaintiff issued its bond to Norris prior to Romine's execution of the indemnification agreement and that, consequently, there was no present consideration for his agreement to indemnify plaintiff. Defendant argues that the agreement was therefore *nudum pactum;* thus, unenforceable.

The facts which defendant has placed before the Court as support for this contention are problematic. The only evidence which defendant has mustered on this issue is in the form of hearsay statements contained in his own deposition, at pages 51–52, and in the second paragraph of his affidavit, in which he asserts that Aubrey Norris *told him* that Norris was working on the Project and already had been issued the bonds prior to Romine's signing the indemnification agreement.

Fed.R.Civ.P. 56(e) provides that hearsay statements are not to be considered "facts" for purposes of a motion for summary judgment.[1] Thus, it is well established that hearsay evidence which is inadmissible in a trial of a case on the merits properly cannot be considered on a motion for summary judgment. *See Broadway v. City of Montgomery, Ala.,* 530 F.2d 657 (5th Cir. 1976); *Horace Slay Auto Sales v. General Motors Corp.,* 495 F.Supp. 415 (S.D.Miss. 1980). The statement attributed to Aubrey Norris in defendant's affidavit, being offered for its truth, is clearly hearsay.[2] As

---

1. Fed.R.Civ.P. 56(e) provides, in relevant part:

    **(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge[ ] [and] shall set forth facts as would be admissible in evidence....

2. Hearsay evidence is defined by Fed.R.Civ.P. 801(c), which provides, in relevant part:

    **(c) Hearsay.** "Hearsay" is a statement, other than one made by the declarant ... offered in evidence to prove the truth of the matter asserted.

no hearsay exception exists which will permit the admission of this information for that purpose, it is not a fact which properly may be considered by the Court for purposes of this motion. *See Broadway, supra.*

In contrast to the inadmissible hearsay statements are the facts offered on this issue by plaintiff as supplied by the affidavit of Thomas Sheehan, a principal of Dixon Sheehan. That affidavit establishes, via Sheehan's *personal* knowledge, that Dixon Sheehan received the executed indemnification agreement prior to the issuance of plaintiff's bonds to Norris on the Project. Sheehan affidavit, paragraphs 7, 13.

Thus, the only facts properly before the Court clearly support a finding that defendant received present consideration in the form of the issuance of plaintiff's bond to Norris in exchange for his promise to indemnify plaintiff. The Court finds, therefore, that the indemnification agreement is valid and enforceable.

## II. *Liability for Claimed Amounts*

■ Defendant also contends that the payments made by plaintiff in settlement of the claims of the six subcontractors on the Project were excessive and that he is, therefore, not required to indemnify plaintiff for those payments. Plaintiff shows that it settled the claims of the six contractors after due investigation and that, there-

fore, it is entitled to full indemnification from defendant. The Court agrees.

Under Georgia law, where the language of a contract is definite and unambiguous, a court must give it effect. *See Opelika Mfg. Corp. v. City of Hawkinsville,* 525 F.2d 941, 943 (5th Cir.1976) (citing *Wolverine Ins. Co. v. Jack Jordan, Inc.,* 213 Ga. 299, 99 S.E.2d 95 (1975)). The law of Georgia additionally provides that "[w]here a decision is left to the discretion of a designated entity, the question is not whether it was in fact erroneous, but whether it was in bad faith, arbitrary or capricious so as to amount to an abuse of that discretion." *MacDougald Constr. Co. v. State Hwy. Dept.,* 125 Ga.App. 591, 593, 188 S.E.2d 405, 407 (1972).

The agreement executed by defendant provided that plaintiff would have sole discretion to settle claims made upon the bond, and that plaintiff's determinations on the claims would be binding.[3] In accordance with Georgia law, *supra,* the Court will not nullify the validity of these provisions in the absence of bad faith or an abuse of discretion on the part of plaintiff in the settlement of the claims at issue. The record is completely devoid of any such evidence of bad faith or abuse of discretion.

In his affidavit, Robert L. Griffith, plaintiff's former bond claims attorney, states and the materials in support of that affidavit indeed substantiate that the following procedures were employed by him in settlement of the six subcontractor's claims:

---

**3.** Article 10 of the parties' indemnification agreement provides, in relevant part:
The company shall have the right, at its option and in its sole discretion:

\* \* \* \* \* \*

(c) to adjust, settle or compromise any claim, demand, suit or judgment upon said bond or bonds, or any of them unless the undersigned shall request in writing the company to litigate such claim or demand, or defend such suit. . . .
The indemnification agreement further provides in Article 11:
The company shall have the exclusive right for itself and for the undersigned to decide and determine whether any claim, demand, suit or judgment upon said bond or bonds shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and its determination shall be final, conclusive, and binding upon the undersigned

(except as provided in Section Tenth (c) hereof); and any loss, costs, charges, expense or liability thereby sustained or incurred, as well as any and all disbursements on account of costs, expenses and attorneys' fees, deemed necessary or advisable by the company, shall be borne and paid immediately by the undersigned, together with legal interest. In the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by an officer or the company, or the voucher or vouchers or other evidence of such payment, settlement or compromise shall be prima facie evidence of the fact and extent of the liability of the undersigned to the company in any claim or suit hereunder and in any and all matters arising between the undersigned and the company.

First, each claimant was required to provide documentation verifying that the materials for which they were claiming payment were furnished for use on the Project; secondly, each claimant was required to attest via a claims affidavit that the materials, equipment, labor and/or supplies for which they were paid were utilized on the Project. Griffith's affidavit further states that, upon receipt of a claimant's documentation and affidavit, he independently verified the propriety of the claims based upon the information submitted by the claimants. Finally, Griffith states that, where a claimant's documentation and affidavit supported its claim and plaintiff was aware of no reason to withhold payment, plaintiff issued a payment check accompanied by a release to be signed and returned by the claimant.

On this issue, defendant offers the affidavits of two of Norris' employees, which state that not all materials delivered by the claimants to the Project site were in fact used on the project. King affidavit, paragraph 3; Kicklighter affidavit, paragraph 3. These affidavits thus serve to create an issue of fact as to whether all of the materials delivered to Norris were used on the Project. However, that issue of fact is not *material* because, as the Georgia law discussed *supra* indicates, the only material issue here is whether plaintiff exhibited bad faith or an abuse of discretion in paying the claimants. Whether the amount paid to the claimants was erroneous is, therefore, irrelevant. As the Griffith affidavit amply establishes, plaintiff was very thorough and methodical in its evaluation of the claims for payment on the bond. The affidavits of defendant's two employees, stating that not all of the delivered supplies were used on the Project, are thus insufficient to create an issue of material fact. Accordingly, defendant is obligated to plaintiff for the amounts paid to the claimant subcontractors.

### III. *Attorney Fees*

Reliance seeks its attorney fees incurred in bringing this action pursuant to Article

---

**4.** Article 18 of the indemnification agreement provides:

18 of the indemnification agreement, which provides for reasonable fees incurred in the enforcement of the agreement.[4] Since, as discussed *supra*, the Court is to give effect to the plain language of a contract, the Court finds that defendant is bound by the terms of the agreement and, therefore, must pay plaintiff its reasonable attorney fees incurred by enforcement of the agreement.

### CONCLUSION

The indemnification agreement at issue herein is valid and enforceable. Pursuant to the terms of that agreement, plaintiff is entitled to be indemnified by defendant in the principal amount of $28,211.80, plus prejudgment interest thereon at the annual rate of seven percent (7%) simple interest. Accordingly, plaintiff's motion for summary judgment is GRANTED and defendant's motion is DENIED. The Clerk of the Court is directed to enter an appropriate judgment. In addition, plaintiff is entitled to its reasonable attorney fees incurred in the enforcement of the indemnification agreement. In the absence of agreement on the fees, the Court, on motion, will decide that issue.

SO ORDERED.

---

The company shall be entitled to reasonable attorneys' fees in the enforcement of this agreement.