## TRANSAMERICA INSURANCE CO., Plaintiff,

v.

## H.V.A.C. CONTRACTORS, INC., William G. Johnston, Jr., Edward C. Staton, and Earl C. Staton, Defendant.

### Civ. No. 1:93–CV–0069–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 16, 1994.

---

970

John V. Burch, Gregory R. Veal, Robert B. Caput, Bovis, Kyle & Burch, Atlanta, GA, for plaintiff.

Philip H. Weener, Weener & Associates, Atlanta, GA, for defendant.

William G. Johnston, Jr., pro se.

## ORDER

CARNES, District Judge.

This case is presently before the Court on Plaintiff's Motion for Summary Judgment on its indemnification claim [# 22–1] and on defendants' counterclaim for negligence and breach of fiduciary duty [# 22–2]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's motion should be granted.

### Background

In 1984, H.V.A.C. Contractors, Inc. ("H.V.A.C.") and its three officers ("defendants") executed an Agreement of Indemnity to induce Transamerica ("plaintiff") to issue payment and performance bonds on behalf of defendants as principal. Three of defendant H.V.A.C.'s officers signed the agreement as indemnitors: William G. Johnston, Jr., president of H.V.A.C., 50% shareholder, and director who managed the company; Edward C. Staton, vice-president, 25% shareholder, and a director; and Earl Staton secretary, treasurer, a 25% shareholder, and a director.[1] This suit arises out of payment and performance bonds plaintiff issued on behalf of defendants for subcontracts to provide heating, ventilation, and air conditioning construction services to general contractors for five construction projects ("projects") in 1989 and 1990.

In April 1990, defendants called upon plaintiff to perform its surety obligations under the bonds on the projects, complete the projects, and pay H.V.A.C.'s bonded obligations. The parties met to discuss plaintiff's performance under the bonds prior to any payments being made. The parties disagree, however, on what happened during the meeting which included the Statons, H.V.A.C.'s counsel, Johnston, and two Transamerica representatives. Defendants H.V.A.C., Edward Staton and Earl Staton assert that plaintiff verbally committed to acquiring defendant Edward Staton's approval prior to making any and all payments under the bonds. Plaintiff denies the existence of any such commitment on its part and, instead, refers to the express terms of the Agreement of Indemnity to support its assertion that it was not required to obtain Edward Staton's approval prior to making bond payments. Defendant Johnston agrees with plaintiff that no oral commitment to submit claims to defendant Edward Staton for his approval was made by plaintiff at the April, 1990, meeting.

H.V.A.C. participated in the negotiation and settlement of subcontractor claims through Johnston, the president of H.V.A.C., who reviewed each claim and its supporting documentation. Plaintiff paid $375,509.90 in bond claims,[2] incurred $16,267.17 in expenses to investigate claims and $40,271.24 in attorney's fees and expenses.[3] Plaintiff also recovered $277,364.38 by pursuing outstanding retainage and contract balances on the defaulted projects. In its Motion for Summary Judgment, plaintiff seeks to recover $154,-

---

**1.** The Statons were not involved in the day to day operations of the company.

**2.** Transamerica paid $323,894.21 with Johnston's approval and $51,615.69 after Johnston moved from Atlanta and stopped giving input.

**3.** The Agreement of Indemnity provides:

The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expense of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured execution of the Bonds, (2) By reason of the failure of the contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

683.93,[4] from the defendants, jointly and severally, under the Agreement of Indemnity for claims payments and expenses incurred as a result of surety bonds issued on behalf of the defendants. Plaintiff also seeks summary judgment against defendants H.V.A.C. Contractors, Inc, Edward C. Staton, and Earl C. Staton on their counterclaim for negligence and breach of fiduciary duty due to alleged improper payment of bond claims.

Although the pleadings are not completely clear, it appears that defendants seek to avoid their obligation to pay plaintiff by alleging (1) plaintiff breached an oral modification to the original indemnity contract, (2) plaintiff paid claims erroneously, (3) plaintiff breached their duty of good faith, and (4) a counterclaim for negligence and breach of fiduciary duty.[5] The Court will discuss the standard for summary judgment then look at each of the defendants' arguments in turn.

### Discussion

I. *Standard for Summary Judgment.*

■ To prevail on a motion for summary judgment, the moving party must demonstrate to the Court, that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of a *genuine* issue of *material* fact with respect to at least one element essential to the moving party's case on which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

■ The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. at 2552–53; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). After the movant has carried his burden, the non-moving party is then required to go beyond the pleadings and present competent evidence[6] designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting FED.R.CIV.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the

(Agreement of Indemnity ¶ 2).

**4.** Calculated as the total amount plaintiff paid out on bonds ($375,509.90) plus the investigation expenses ($16,267.17) and litigation expenses ($40,271.24) minus the amount recovered ($277,-364.38).

**5.** Defendants imply in their recitation of the facts that Johnston did not have authority to enter into these bond contracts. They do not however ad-

vance that assertion under any legal theory, nor do they appear to dispute the validity of the contracts. The Court will assume that the original contract and the subsequent bonds issued on it are valid binding contracts.

**6.** The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

non[-]moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence disputing at least one element material to plaintiff's case so as to create a genuine issue for trial.

## II. *Summary Judgment on Plaintiff's Indemnification Claim*

Under the Agreement of Indemnity, the defendants promised to hold plaintiff harmless and indemnify the losses it incurred in paying H.V.A.C.'s bonds. The contract provided that "vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety." (Agreement of Indemnity ¶ 2). Plaintiff has submitted all claim vouchers and evidence of payment, but defendants have not indemnified plaintiff as they promised. Although defendants have failed to indemnify plaintiff, they do not dispute that agreements of indemnity are enforceable in the state of Georgia. *Reliance Ins. Co. v. Romine*, 707 F.Supp. 550 (S.D.Ga. 1989), *aff'd*, 888 F.2d 1344 (11th Cir.1989).

### A. *Breach of oral modification*

It is undisputed that the indemnity contract provided:

The Surety shall have the right to adjust settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such a claim or demand ... and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgement or judgements rendered.

(Agreement of Indemnity ¶ 13). It is also undisputed that defendants did not make a request to litigate any of the claims at issue in this case. Defendants claim the original indemnity contract was orally modified at the April, 1990, meeting and required Johnston's and Edward Staton's approval before it could pay any claims. Plaintiff vigorously denies any agreement was made to waive or modify any provision of the original indemnity contract. Defendant Johnston agrees with plaintiff's assertions with respect to the absence of any oral amendment to the Agreement of Indemnity.

■ Although a dispute exists with respect to the "oral modification" alleged by the defendants, any such dispute of fact is not *material* to the Court's decision of Plaintiff's Motion for Summary Judgment. Even if this Court assumes that the oral agreement did occur, the modification is not effective. The original contract clearly states:

This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

(Agreement of Indemnity ¶ 20). Provisions requiring written modification have been held valid and binding in Georgia. *Harper v. Liberty Nat'l Life Ins. Co.*, 645 F.Supp. 260 (M.D.Ga.1986), *aff'd*, 819 F.2d 1149 (11th Cir. 1987).

Because defendants have not alleged that a writing took place, nor produced any evidence of the existence of a writing containing the alleged modification, there can be no question that any agreement altering the written terms of the Agreement of Indemnity was ineffective. As written, the original contract did not require approval by any H.V.A.C. representative prior to plaintiff's payments under the bonds. Contrary to defendants' arguments, it appears to the Court that plaintiff did more than was required of it under the contract by consulting with Johnston on most of the claims. While plaintiff did not give Johnston final approval rights, his experience as the manager of day to day operations helped plaintiff handle the claims more accurately and efficiently.

## B. *Double payments*

Defendants also allege plaintiff paid five claims twice.[7] The indemnity contract provides:

> ... the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed....

(Agreement of Indemnity ¶ 20). This agreement did not require Transamerica to be correct in its payment of claims, only to make them in good faith.

Defendants' only allegation of bad faith on the double payments is an unsupported accusation that plaintiff inflated payments in order to collect over and above the contracts because it perceived the Statons as having the ability to pay. The only evidence defendants offer in support of their contention is a routine memorandum assessing the indemnitors' financial conditions.[8] The Court concludes that this memorandum does not suggest the inference that defendants seek: that plaintiff paid claims in bad faith or had a motive to do so. Plaintiff had nothing to gain by inflating payments. To the contrary, each payment required more work and risk on plaintiff's part that it might not recover from defendants under the Agreement of Indemnity.[9]

## C. *Good faith*

Defendants also allege that plaintiff did not investigate the claims properly or research the H.V.A.C.'s solvency after the Agreement of Indemnity was signed. Defendants do not, however, direct the Court to a legal or contractual duty on the part of the plaintiff to conduct any such investigation,[10] let alone facts that would constitute a breach of the duty of good faith. Further, plaintiff's use of Johnston, the only party to have knowledge of all of the transactions, to verify most claims supports plaintiff's assertion that it held a good faith belief that the claims were valid.

## D. *Summary*

There is simply no dispute as to the material facts in this case. Even if an oral modification were attempted by the parties, it did not alter the Agreement of Indemnity. Even if plaintiff made some double payments, it complied with the duties prescribed by the Agreement of Indemnity, which required Transamerica to make all payments in good faith. Defendants have failed to present any *evidence* of bad faith. Thus the Court grants Plaintiff's Motion for Summary Judgment on its indemnification claim.

## III. *Summary Judgment on Defendant Statons' Counterclaim for Negligence and Breach of Contract*

■ Defendants allege in their counterclaim that plaintiff caused their company to lose funds when it paid claims in a negligent manner and that such payments constitute a breach of plaintiff's fiduciary duty to the defendants. The Agreement of Indemnity outlined the duties of Transamerica:

> ... the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about matters herein contemplated in this Agreement under the belief that it is or was liable for the sums

7. The total of these claims was approximately $35,544.41, less than 9.5% of the total claims paid. Defendants made one $550 payment during litigation, even though H.V.A.C.'s president approved about 85% of the claims. *See note 2 supra.*

8. Defendants have not produced evidence of any financial incentive to the plaintiff for making inflated payments.

9. In addition, the fact that a representative from H.V.A.C., Johnston, approved the claims allegedly paid twice, supports plaintiff's good faith belief in their validity. Defendants have not provided any records to substantiate their claim that the payments were actually deducted from the account twice.

10. Defendants allege that plaintiff should have learned that Johnston had an economic interest in one entity that Transamerica paid $3,157.88, that plaintiff should have held materialman to warranty their work, that plaintiff paid invoices for materials not used on the projects, and that Transamerica should not have issued the bonds due to the H.V.A.C.'s financial condition.

and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed ...

(Agreement of Indemnity ¶ 2). Plaintiff correctly cites the standard of law in Georgia for such a clause:

Where a decision is left to the discretion of a designated entity, the question is not whether it was in fact erroneous, but whether it was in bad faith, arbitrary or capricious so as to amount to an abuse of that discretion.

*Reliance,* 707 F.Supp. at 552, quoting *MacDougald Constr. Co. v. State Hwy. Dept.,* 125 Ga.App. 591, 593, 188 S.E.2d 405, 407 (1972). The contract, and pertinent Georgia law, required plaintiff only to make a good faith determination of valid claims, not to be correct in its evaluations. The only indication the defendants have of bad faith is Edward Staton's testimony that he was suspicious and believed some of the bond claims were "sort of funny." Defendants have not established a duty on the part of the plaintiff to the defendants, nor have they presented evidence of bad faith. As there is no issue of material fact, this Court grants the Plaintiff's Motion for Summary Judgment on the negligence counterclaim.

The Statons baldly assert that plaintiff breached a fiduciary duty to the defendants when it disbursed funds and failed to consult with the Statons regarding the transition and completion of all projects. The defendants have cited no authority for the proposition that a surety owes any fiduciary duty to its indemnitors beyond the duties included in the contract.[11] Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on the counterclaim for breach of fiduciary duty.

### *Conclusion*

Plaintiff fulfilled its duties under the indemnity contract by paying the bonded claims in good faith and submitting the documentation to defendants. Under the Agreement of Indemnity, the defendants owe Plaintiff $154,683.93. Accordingly, Plaintiff's Motions for Summary Judgment are GRANTED.

SO ORDERED.

11. The Court has found some authority for the proposition that a surety may owe a fiduciary's duty of good faith to the indemnitors. *McLendon v. Hartford Accident & Indem. Co,* 119 Ga.App. 459, 461, 167 S.E.2d 725 (1969). The contract in question, however, specifically provided for that duty of good faith and the Court has not located any authority which states the surety owes the indemnitors any duty beyond what is already provided in the Agreement of Indemnity.